## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

In re Application of

VESTOLIT GMBH

and

CELANESE EUROPE B.V.,

*Applicants*,

To Obtain Discovery for Use in a
Foreign Proceeding Pursuant to
28 U.S.C. § 1782

Misc. Action No. _____

## MEMORANDUM OF LAW IN SUPPORT OF
## *EX PARTE* APPLICATION FOR AN ORDER UNDER 28 U.S.C. § 1782
## TO OBTAIN DISCOVERY FOR USE IN A FOREIGN PROCEEDING

**WHITE & CASE**
J. Mark Gidley (*Pro hac vice forthcoming*)
J. Frank Hogue (*Pro hac vice forthcoming*)
Jaclyn Phillips (*Pro hac vice forthcoming*)
Alec Albright (*Pro hac vice forthcoming*)

701 13th Street N.W.
Washington, D.C. 20005
Phone:   (202) 626-3600
Fax:       (202) 639-9355
mgidley@whitecase.com
fhogue@whitecase.com
jaclyn.phillips@whitecase.com
alec.albright@whitecase.com

*Of Counsel for Applicant Vestolit GmbH*

Dated: December 20, 2024

Samuel T. Hirzel, II (# 4415)
Elizabeth A. DeFelice (#5474)
**HEYMAN ENERIO GATTUSO & HIRZEL LLP**
300 Delaware Avenue, Suite 200
Wilmington, DE 19801
(302) 472-7300
shirzel@hegh.law
edefelice@hegh.law

*Counsel for Applicants Vestolit GmbH and
Celanese Europe B.V.*

**WACHTEL, LIPTON, ROSEN & KATZ**
Graham W. Meli (*Pro hac vice forthcoming*)
51 West 52 Street
New York, NY 10019
Phone:  (212) 403-1000
Fax:  (212) 403-2000
gwmeli@wlrk.com

*Of Counsel for Applicant Celanese
Europe B.V.*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND ......................................................................................................................4

    A.    The Parties ...................................................................................................4

    B.    MCP and Ethylene Pricing.............................................................................5

    C.    The 2020 European Commission Decision........................................................6

    D.    Shell Seeks to Leverage the Limited European Commission Decision in Dutch Court ..........................................................................................................7

    E.    SCE Confirms Shell Chemical Is an Interested Party in the Dutch Proceeding......9

    F.    The Instant Application.................................................................................11

ARGUMENT .........................................................................................................................12

I.    VESTOLIT AND CELANESE'S APPLICATION SHOULD BE GRANTED BECAUSE IT SATISFIES THE REQUIREMENTS OF 28 U.S.C. § 1782....................13

    A.    Shell Chemical Resides in the District of Delaware ..............................................14

    B.    The Requested Discovery Is "For Use In" a Foreign Court Proceeding ...............14

    C.    Vestolit and Celanese are Each an "Interested Person" Because They are Parties in the Dutch Proceeding ...................................................................15

II.    ALL FOUR *INTEL* DISCRETIONARY FACTORS COUNSEL IN FAVOR OF GRANTING THE APPLICATION................................................................................15

    A.    Shell Chemical Is Not a Direct Participant in the Dutch Proceeding ...................16

    B.    The Dutch Court Would Be Receptive to Information Obtained Pursuant to 28 U.S.C. § 1782........................................................................................17

    C.    Vestolit and Celanese's Request Is Not an Attempt To Circumvent Proof-Gathering Limitations under Dutch Law .............................................................18

    D.    Vestolit and Celanese's Targeted Discovery Requests Are Not Unduly Intrusive or Burdensome...........................................................................19

CONCLUSION......................................................................................................................20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## CASES

*Bayer AG v. Betachem, Inc.*,
    173 F.3d 188 (3d Cir. 1999)....................................................................................13

*In re Bayer AG*,
    146 F.3d 188 (3d Cir. 1998).....................................................................................14

*In re Biomet Orthopaedics Switz. GmbH*,
    742 F. App'x 690 (3d Cir. 2018) .................................................................13, 14, 16

*In re Bloomfield Inv. Res. Corp.*,
    No. 18-mc-2608, 2018 U.S. Dist. LEXIS 206338 (E.D.N.Y. Dec. 6, 2018)............18

*In re Chevron Corp.*,
    633 F.3d 153 (3d Cir. 2011).....................................................................................12

*In re Gemeinshcaftspraxis Dr. Med. Schottdorf*,
    No. 19-cv-88, 2006 U.S. Dist. LEXIS 94161 (S.D.N.Y. Dec. 29, 2006) ................18

*In re Hulley Enter. Ltd.*,
    358 F. Supp. 3d 331 (S.D.N.Y. 2019)......................................................................17

*In re Hulley Enters.*,
    400 F. Supp. 3d 62 (S.D.N.Y. 2019)........................................................................17

*In re Miya Water Projects Netherlands B.V.*,
    No. 23-00391, 2023 U.S. Dist. LEXIS 198201 (D.P.R. Nov. 3, 2023)...................15

*In re Naranjo*,
    768 F.3d 332 (4th Cir. 2014) ...................................................................................14

*In re Newbrook Shipping Corp.*,
    31 F.4th 889 (4th Cir. 2022) ....................................................................................13

*In re Nokia Techs. Oy*,
    No. 23-01395-GBW, 2024 U.S. Dist. LEXIS 70832 (D. Del. Apr. 18, 2024) .................13, 14

*In re O'Keeffe*,
    646 F. App'x 263 (3d Cir. 2016) ........................................................................16, 17

*In re OOO Promneftstroy*,
    134 F. Supp. 3d 789 (S.D.N.Y. 2015)......................................................................17

*In re Servicio Pan Americano de Proteccion, C.A.*,
    354 F. Supp. 2d 269 (S.D.N.Y. 2004) ...................................................................16

*In re Storag Etzel GmbH*,
    613 F. Supp. 3d 813 (D. Del. 2020) ....................................................................13

*In re Upper Brook Cos.*,
    No. 22-mc-97, 2022 U.S. Dist. LEXIS 231242 (S.D.N.Y. Dec. 23, 2022) ............15

*In re Vienna*,
    No. 23-mc-258-CFC, 2023 U.S. Dist. LEXIS 171349 (D. Del. Sep. 26, 2023) ...............13, 14

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004) ......................................................................................... *passim*

*Mees v. Buiter*,
    793 F.3d 291 (2d Cir. 2015) ...............................................................................18

## STATUTES AND RULES

28 U.S.C. § 1782 ................................................................................................... *passim*

## PRELIMINARY STATEMENT

Vestolit GmbH ("Vestolit") and Celanese Europe B.V. ("Celanese") submit this application pursuant to 28 U.S.C. § 1782 requesting leave to serve targeted subpoenas on Shell Chemical LP ("Shell Chemical"), a Delaware-incorporated affiliate of Shell plc, the multinational oil and gas company. Vestolit and Celanese seek information from Shell Chemical for use in an ongoing proceeding in the Amsterdam District Court (the "Dutch Proceeding") initiated by Shell Chemical's affiliate, Shell Chemicals Europe, B.V. ("SCE"). To advance that Dutch litigation, Shell Chemical has entered a Mandate Agreement with SCE. That Agreement authorizes SCE to pursue damages related to products that Shell Chemical manufactured and that were sold by SCE.

In the Dutch Proceeding, SCE seeks more than US$ 1.2 billion in damages against Vestolit, Celanese, and other defendants (together, the "Ethylene Defendants"). SCE claims antitrust damages because the Ethylene Defendants allegedly paid SCE too low a price for ethylene and ethylene derivative products. Specifically, SCE's Dutch litigation seeks to leverage a narrow 2020 decision of the European Commission ("EC"). There, Vestolit, Celanese, and other Ethylene Defendants settled with the EC certain antitrust claims related to exchanging information regarding a price component of ethylene in the limited markets of Northwestern Europe—specifically, Belgium, France, Germany, and the Netherlands. Although the EC's decision is limited in scope— to an ethylene price component for ethylene in four European countries—Shell's gambit in the Dutch Proceeding is to seek exorbitant damages related not only to ethylene, but also other products, including products produced globally that were not part of the EC Decision.

In the Dutch Proceeding SCE has pursued a strategy of only incrementally disclosing the potential claims relating to affiliates from around the globe—affiliates that are not formal parties to the Dutch Proceeding—including its Delaware affiliate and the discovery target here, Shell Chemical. Even though Shell Chemical has not appeared in Dutch court, SCE's own pleadings

there acknowledge that Shell Chemical supplied higher olefins and derivatives ("HODer") products to SCE, and SCE's claimed damages include at least EUR 204 million attributed to SCE's sale of these Shell Chemical HODer products.

SCE only recently disclosed—on November 11, 2024—that Shell Chemical, among other Shell affiliates, provided to SCE a so-called "mandate" that purports to authorize SCE to bring claims in the Dutch courts for the Shell Chemical products. That is, Shell Chemical, via a mandate agreement, has apparently empowered SCE to seek recovery through the Dutch Proceeding of "damages that may have been transferred to affiliate entities of the Shell group of companies . . . ." *See* Declaration of H.M. Cornelissen ("Cornelissen Decl."), Ex. 7 (Mandate Agreement between Shell Chemical and SCE dated October 22, 2024 ("Shell Chemical Mandate Agreement"), Recital E.). SCE's November 2024 correspondence has confirmed that Shell Chemical is the manufacturer of products for which SCE claims hundreds of millions in damages. In short, the correspondence and recent "mandate" demonstrate that Shell Chemical is a real party in interest in the Dutch Proceeding.

Notwithstanding Shell Chemical's apparent delegation for SCE to pursue Shell Chemical's interests in the Dutch court, the Shell Chemical Mandate Agreement fails to provide SCE any contractual right to obtain documents and information from Shell Chemical, which right is customary in a U.S.-style assignment of claims. Moreover, Shell Chemical is not a Dutch entity, is not a named party to the Dutch Proceeding, and has not produced any documents in that proceeding. Cornelissen Decl. ¶¶ 30-38.

Despite suing for alleged damages going back over a decade to 2011, SCE has also admitted that under its document retention policies it has been systematically destroying documents more than three years old. SCE states that it "'assumes that it no longer has in its

possession or custody much of what'" Vestolit seeks in the Dutch disclosure regarding SCE's claims.  Cornelissen Decl. ¶ 28 (quoting SCE's Opposition to Vestolit's Motion for Disclosure).

As a result of Shell's gambit of seeking damages allegedly suffered by a U.S. entity (Shell Chemical) as to which it is resisting Dutch disclosure and the admitted destruction of documents by the European entity that would be subject to disclosure there, Vestolit and Celanese face a US$ 1.2 billion claim without access to fundamental information about Shell Chemical's purported interests or role in the Dutch case.  For example, in the Dutch Proceeding SCE and Shell Chemical seek to deprive the Ethylene Defendants of any access to information regarding Shell Chemical's relationship with SCE under the Shell Chemical Mandate Agreement.  Shell's tactics additionally obfuscate the circumstances and validity of that mandate, as well as Shell Chemical's alleged (potential) damages, the benchmarks SCE relies on, Shell Chemical's role in the ethylene market, and the purported connection to localized ethylene prices in Northwestern Europe.  SCE's strategy to bring massive damages claims without disclosing basic information about SCE's overreaching global claims necessitates Vestolit and Celanese's request for this Court's assistance under 28 U.S.C. § 1782.

### Vestolit and Celanese's Application Readily Meets § 1782 Criteria for Discovery

Vestolit and Celanese's Application easily satisfies 28 U.S.C. § 1782's statutory requirements and should be granted.

Shell Chemical is incorporated in Delaware and therefore "resides or is found" in this District.  In addition, the requested discovery is "for use" in an ongoing foreign proceeding in the Dutch courts—the Dutch Proceeding.  Vestolit and Celanese, named defendants in the Dutch Proceeding, are plainly interested persons in those proceedings.

The four discretionary factors enumerated by the U.S. Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), also weigh heavily in favor of granting Vestolit and Celanese's Application.  *First*, Shell Chemical is not a named party in the Dutch Proceeding and does not reside in the Netherlands, and SCE has not agreed to provide any documents on behalf of Shell Chemical in that proceeding, or in any case not in a timely manner. *Second*, Dutch courts are generally receptive to evidence obtained through 28 U.S.C. § 1782, and there is no reason to expect that they would be unreceptive to the information sought here.  *Third*, the information sought through this application is vital to aid in the development of Vestolit and Celanese's arguments and defenses in the pending US$ 1.2 billion case.  Vestolit and Celanese's requests are particularly important given SCE's recent confirmation of Shell Chemical's interest in the Dutch Proceeding under the Shell Chemical Mandate Agreement.  *Finally*, Vestolit and Celanese's narrowly tailored and targeted discovery requests are neither unduly intrusive nor burdensome, particularly where Shell Chemical is a real party in interest, and not a disinterested non-party, in the Dutch Proceeding.  *See Intel*, 542 U.S. at 264-65.

Accordingly, and for the reasons set forth below, Vestolit and Celanese respectfully request that the Court grant the Application and permit Vestolit and Celanese to serve on Shell Chemical the subpoenas attached as Exhibits 1-3 to the accompanying Declaration of J. Mark Gidley ("Gidley Declaration").

## **BACKGROUND**

### A.    **The Parties**

Petitioner Vestolit is a company organized and existing under the laws of Germany, with its principal place of business at Paul-Baumann-Strasse 1, 45772 Marl, Germany.  Vestolit researches, develops, and supplies the raw material for general and specialty polyvinylchloride

(commonly known as "PVC").[1]  A key input for PVC is ethylene.

Petitioner Celanese is a company organized and existing under the laws of the Netherlands, with its principal place of business at The New Atrium, Strawinskylaan 3105, 1077 ZX Amsterdam, the Netherlands.  Celanese is a specialty chemical manufacturer that manufacturers various specialty chemicals that use ethylene as an input.

Respondent Shell Chemical is an affiliate of Shell plc, an oil and gas conglomerate based in the United Kingdom and the Netherlands.  Shell Chemical also is an affiliate of SCE, the plaintiff in the Dutch Proceeding, as confirmed expressly in the Shell Chemical Mandate Agreement.  *See* Cornelissen Decl., Ex. 7 (Shell Chemical Mandate Agreement).  Shell Chemical is organized and exists under the laws of Delaware.  *See* Gidley Decl., Ex. 4 (Shell Chemical Entity Detail – Delaware Division of Corporations).  Shell Chemical maintains its principal place of business in Houston, Texas.  *See* Cornelissen Decl., Ex. 7 (Shell Chemical Mandate Agreement).  According to Shell's website, "Shell Chemical LP produces approximately 20 billion pounds of chemicals annually," including "ethylene oxide/ethylene glycols," at multiple U.S. manufacturing facilities.[2]

## B.    MCP and Ethylene Pricing

At the center of this dispute is the price of ethylene, particularly within the ethylene merchant markets in Belgium, France, Germany, and the Netherlands (collectively, "Northwest Europe").  SCE claims that it was paid too little for ethylene due to the defendants' conduct. Ethylene is a colorless flammable gas commonly produced from the hydrocarbon naphtha and gas

---

[1]    *See generally* Vestolit Webpage, "About Us," *accessible at* https://www.vestolit.com/about-us-2/about-us/ (last accessed Nov. 12, 2024).

[2]    *See* Shell Webpage, "Chemicals," *accessible at* https://www.shell.us/business-customers/chemicals.html (last accessed Nov. 12, 2024).

through a process known as steam cracking.  Cornelissen Decl. ¶ 13.  Ethylene is widely used throughout the chemical industry to produce a multitude of products.  Cornelissen Decl. ¶ 13.

Buyers and sellers of ethylene in Northwest Europe can refer to the ethylene Monthly Contract Price (the "MCP") reported by private and independent reporting agencies.  *See* Cornelissen Decl. ¶¶ 13-14.  Although the MCP is used by parties in Northwest Europe as a benchmark, "the MCP is *not* a net price for ethylene."  Cornelissen Decl. ¶ 14 (emphasis added).  Instead, the MCP merely functions as one part among many in pricing formulas used for certain ethylene supply agreements in this merchant market.  *See* Cornelissen Decl. ¶¶ 13-14.

### C.     The 2020 European Commission Decision

In May 2017, the European Commission (the executive branch of the European Union) undertook inspections of the offices of certain ethylene purchasers, including Vestolit and Celanese, as part of an investigation into alleged collusion to depress ethylene prices.  *See* Cornelissen Decl. ¶ 15.  Vestolit and Celanese filed leniency applications.  Cornelissen Decl. ¶ 15. In July 2020, the European Commission announced its final decision, finding that the Ethylene Defendants, including Vestolit and Celanese, had exchanged information with a view to influencing the MCP in Belgium, France, Germany, and the Netherlands.  *See* Cornelissen Decl. ¶ 16; *see generally* Cornelissen Decl. Ex. 1 (Case COMP/AT.40410-Ethylene, Comm'n Decision (July 14, 2020) (the "European Commission Decision" or "EC Decision")).  The EC Decision did not find that the infringing behavior had an effect on Shell Chemical's pricing or caused damage to Shell Chemical.  Nor did the EC find that price of Shell Chemical's products was pushed below the competitive level.  The EC did not make findings as to what the competitive price level of ethylene should have been.  The European Commission also did not find that the infringement of EU competition law extended beyond Belgium, France, Germany, and the Netherlands.  *See* Cornelissen Decl. ¶ 16.  Critical to the ongoing Dutch Proceeding where SCE seeks damages, in

reaching its decision, the European Commission "did not need to prove that the infringement had any actual effects on the market."  Cornelissen Decl. ¶ 16 (citing European Commission Decision ¶ 71).  The question of effects is a key issue in the Dutch proceeding.

### D.     Shell Seeks to Leverage the Limited European Commission Decision in Dutch Court

Two years after the European Commission Decision, SCE (an ethylene supplier) initiated a follow-on lawsuit in the Amsterdam District Court, captioned as *Shell Chemicals, B.V. v. Celanese Europe B.V.*, No. C/13/739736.  *See* Cornelissen Decl. ¶¶ 2, 17.  SCE seeks to leverage the limited European Commission Decision of July 14, 2020, to extract "over 1.13 billion Euros (more than US$ 1.2 billion) in damages" from Vestolit, Celanese, and the other Ethylene Defendants.  Cornelissen Decl. ¶ 19.  SCE predicated its US$ 1.2 billion damages claim on (1) SCE's own alleged ethylene and ethylene derivatives sales; (2) mandate agreements mandating SCE to pursue (potential) damages claims from its affiliates, including Shell Chemical LP and other "unnamed affiliates;" (3) an expert report that based its damages calculation on a comparison with the North-East Asian market; and (4) the claim that Vestolit, Celanese, and the other Ethylene Defendants are jointly and severally liable for alleged undercharges *after* the European Commission inspections and after collusion had ceased.  *See* Cornelissen Decl. ¶¶ 18-21.  Further, SCE asserts in its Shell Damages Memorandum in the Dutch Proceeding that at least EUR 204 million of its alleged damages related to the sale of HODer and high-purity ethylene oxide ("HPEO") products—ethylene derivative products—produced and supplied by Shell Chemical and sold by SCE.  *See* Cornelissen Decl. ¶ 19.

In serving its writ of summons (the complaint) in the Dutch Proceeding on the Ethylene Defendants in 2022, and in its subsequent provision of relevant exhibits, SCE did not disclose the names of all the alleged potentially impacted Shell entities, nor did SCE provide any proof that

these entities had, as SCE claimed, mandated SCE to bring their respective claims to SCE.  *See* Cornelissen Decl. ¶¶ 18, 20-21.  SCE has refused the Ethylene Defendants' requests that SCE produce documents substantiating these foundational claims.  *See* Cornelissen Decl. ¶¶ 21, 26-36.

During a case-management hearing held on February 12, 2024, SCE continued to balk at delivering the documents underlying the sole basis for its alleged damage calculation—an expert report prepared by AlixPartners—claiming that the calculation of damages was based on alleged confidential business information.  *See* Cornelissen Decl. ¶¶ 20, 35-36.  In response, the Dutch court instituted a confidentiality ring, through which select attorneys and experts would be able to access the confidential business data stored in a data room.  *See* Cornelissen Decl. ¶ 22. Subsequently, SCE refused to expand the confidentiality ring to include the Ethylene Defendants' in-house lawyers and employees who were in a position to assess and interpret for the Ethylene Defendants' lawyers and external experts the information in the damages calculation data room. *See* Cornelissen Decl. ¶ 24.  The Dutch court ultimately had to intervene, ruling on August 14, 2024, that SCE must expand the confidentiality ring.  *See* Cornelissen Decl. ¶ 25.

On March 27, 2024, Vestolit filed a motion under article 843a of the Dutch Code of Civil Procedure ("DCCP") to obtain disclosure from SCE regarding documents necessary for Vestolit's defense and expert reports, including SCE's ethylene margins and pricing information.  *See* Cornelissen Decl. ¶¶ 26-27.  The Dutch court has indicated that the oral hearing for Vestolit's discovery request would not be held until March 25, 2025—an entire year after Vestolit initially filed the article 843a motion for disclosure.  *See* Cornelissen Decl. ¶¶ 26-29.  Regardless of the outcome of Vestolit's disclosure request, there is no reason to believe that SCE will make documents from Shell Chemical available in response to the Dutch Court's order.

Accordingly, Vestolit, Celanese, and the other Ethylene Defendants served SCE with two

letters on October 16, 2024, requesting that certain information fundamental to SCE's claims and Vestolit's defenses be sent to the Ethylene Defendants by October 28, 2024. *See* Cornelissen Decl. ¶ 30. The first letter requested that SCE identify the other Shell entities that allegedly mandated SCE to represent them in the Dutch Proceeding and that SCE provide proof that these entities mandated SCE to bring their potential claims in that litigation. *See* Cornelissen Decl. ¶ 31. The second letter requested the ethylene sales margin data of SCE and SCE's represented entities from 2010-2020 in Europe, North America, and Asia. *See* Cornelissen Decl. ¶ 32. As discussed below, SCE provided a partial response to the Ethylene Defendants' request regarding which entities' interests SCE purports to represent in the Dutch Proceeding. *See* Cornelissen Decl. ¶¶ 33-34. To date, SCE has failed to provide any documents or information to the Ethylene Defendants' request for basic sales margin data that establishes the alleged foundation for SCE's substantive claims. *See* Cornelissen Decl. ¶ 35.

E.      **SCE Confirms Shell Chemical Is an Interested Party in the Dutch Proceeding**

On November 11, 2024, SCE's counsel in the Dutch Proceeding responded in writing to the Ethylene Defendants' request regarding "the mandates provided to SCE by other Shell Group entities." Cornelissen Decl., Ex. 9 (Ltr. from Frank Kroes to Rick Cornelissen dated November 11, 2024 (the "Nov. 11, 2024 Mandate Letter")). In that letter, SCE's counsel confirmed that "SCE has received mandates from Other Shell Entities to institute claims against [the Ethylene Defendants] should they have suffered damages" because of the conduct subject of the European Commission's Decision. Cornelissen Decl., Ex. 9 (Nov. 11, 2024 Mandate Letter). Moreover, SCE's counsel stated that because "the Shell Group – being a net producer [of ethylene] – cannot pass-on its damages to third parties," the relevant Shell affiliates, including Shell Chemical, "mandated SCE to collect their damages" to the extent the possibility of an internal pass-on became

9

relevant.  Cornelissen Decl., Ex. 9 (Nov. 11, 2024 Mandate Letter).  SCE's counsel attached with its letter four signed mandate agreements "to evidence [] its right of claim."  Cornelissen Decl., Ex. 9 (Nov. 11, 2024 Mandate Letter).  In particular, those mandates were apparently provided by Shell Chemical, as well as Shell Company of Türkiye Limited, Shell Deutschland GmbH, and Shell Downstream South Africa (Proprietary) Limited.  Cornelissen Decl., Ex. 9 (Nov. 11, 2024 Mandate Letter).

As explained in the Cornelissen Declaration, Dutch law allows defendants to raise against antitrust damages claims a so-called "pass-on" defense.  That is, defendants are entitled to show that any damages allegedly incurred by the plaintiff were in fact passed along the supply chain to other entities, and thus not suffered by plaintiff itself.  Cornelissen Decl. ¶ 39 (explaining that it "it is well established" under Dutch law that a civil antitrust defendant "may eliminate or reduce the damage if the court accepts that any alleged damage[s] were, either in whole or in part, in fact passed on through the supply chain by the plaintiff" and citing Dutch statutory law and a Dutch Supreme Court decision noting the same).  SCE is keenly aware of this defense.  In its November 11, 2024 Mandate Letter, SCE stated that because it "could not exclude" that the Ethylene Defendants "would raise the possibility of an internal pass-on," the "relevant Other Shell Entities," including Shell Chemical, "mandated SCE to collect their damages."  Cornelissen Decl., Ex. 9 (Nov. 11, 2024 Mandate Letter).  Accordingly, and notwithstanding SCE's legal position that pass-on is not applicable in the Dutch Proceeding, SCE has confirmed the relevance of the pass-on theory (and thereby any information and documents related thereto) in the Dutch Proceeding.  Cornelissen Decl., Ex. 9 (Nov. 11, 2024 Mandate Letter).

As noted, the Shell Chemical Mandate Agreement is dated October 22, 2024.  *See* Cornelissen Decl., Ex. 7 (Shell Chemical Mandate Agreement).  In that agreement, and in view of

the parties' "wish to formalize, acknowledge and affirm in writing the mandate of SCE," the parties state that "SCE initiated proceedings against [the Ethylene Defendants] before the District Court of Amsterdam, seeking to recover [] damages . . . , including damages that may have been transferred to affiliate entities of the Shell group of companies . . . in the event that a pass-on effect can be established." *See* Cornelissen Decl., Ex. 7 (Shell Chemical Mandate Agreement, Recitals D, E). The mandate establishes that Shell Chemical provides an "exclusive" mandate to SCE to: (i) "initiate court proceedings"; (ii) "seek[] the recovery of damages" suffered by Shell Chemical; and (iii) "reach an out-of-court settlement in [SCE's] own name for the account of [Shell Chemical]." *See* Cornelissen Decl., Ex. 7 (Shell Chemical Mandate Agreement, section 1.1). The Shell Chemical Mandate Agreement does not provide SCE any rights of access to Shell Chemical's documents and information; nor does the agreement set forth any general requirement of cooperation as between the parties in the Dutch Proceeding.

### F.    The Instant Application

In light of the foregoing, it is clear that Shell Chemical is in possession, custody, or control of information directly relevant and highly material for advancing Vestolit's and Celanese's defenses in the Netherlands. In the proposed subpoenas, Vestolit and Celanese have carefully drafted targeted document requests and deposition topics that are likely to uncover important documents and information related to Shell Chemical's role and interests in the Dutch Proceeding.

These requests concern *inter alia* the following categories of information: mandates and/or authorizations Shell Chemical or any other Shell affiliate made to SCE concerning the Dutch Proceeding (RFP Nos. 1-2); Shell Chemical's relationship with SCE, including as to any assertions of damages in the Dutch Proceeding (RFP Nos. 3-6); Shell's margins on "crackers," which are used to produce ethylene from inputs, in specified markets (RFP Nos. 7-8); Shell's involvement with HODer and HPEO pricing and sales (RFP Nos. 9-12); Shell's ethylene pricing and ethylene-

specific margins (RFP Nos. 13-17); Shell's propylene-specific margins[3] (RFP No. 18); Shell's use of MCP for pricing, sales, and analysis of HODer, HPEO, ethylene, and/or ethylene derivatives (RFP Nos. 19-21); Shell Chemical's purchase of the ethylene inputs of naphtha and natural gas (RFP Nos. 22-24); Shell's participation in the joint venture with the China National Offshore Oil Corporation ("CNOOC"), particularly as regards ethylene and propylene margins, as well as market trends (RFP Nos. 25-26); and Shell's meetings with ethylene competitors and participation in industry trade shows, industry reports concerning the price and supply of ethylene, non-privileged documents relating to the European Commission's decision, document holds related to the Dutch Proceeding, and document retention policies (RFP Nos. 27-30). *See* Gidley Decl., Ex. 1 (Proposed Document Subpoena). In addition, Vestolit and Celanese have drafted deposition topics to be answered by a corporate representative pursuant to Federal Rule of Civil Procedure 30(b)(6) (*see generally* Gidley Decl., Ex. 2 (Proposed Rule 30(b)(6) Deposition Subpoena))., and applicants seek a subpoena for deposition testimony from Shell Chemical's President Marla Kline, who signed the Shell Chemical Mandate Agreement. *See generally* Gidley Decl., Ex. 3 (Proposed Kline Deposition Subpoena).

Together, these issues and categories of information sought in the subpoenas all are critical for Vestolit and Celanese to effectively defend against the claims in the Dutch Proceeding.

## **ARGUMENT**

This Court should grant Vestolit and Celanese's *ex parte* Application because it satisfies the statutory requirements of 28 U.S.C. § 1782. Each of the discretionary factors set forth by the U.S. Supreme Court in *Intel* also counsels in favor of granting § 1782 discovery here. *See* 542

---

[3] Propylene is a member of the olefin family of chemicals and a co-product of ethylene production. Because it is a co-product of ethylene production, it can be expected to be a useful price comparator for ethylene for the period in which Shell claims damages.

U.S. at 264-65; *see also In re Chevron Corp.*, 633 F.3d 153, 156 (3d Cir. 2011) (affirming the district court's grant of § 1782 discovery where applicant satisfied statutory and *Intel* factors); *see also In re Newbrook Shipping Corp.*, 31 F.4th 889, 892 (4th Cir. 2022) ("[Section 1782] applications are often decided *ex parte*, with the target having a chance to later challenge the discovery order."); Order, *In re Ex parte in re Sevier*, No. 22-mc-80-RGA-SRF (D. Del. Feb. 16, 2022), Dkt. No. 5 (granting *ex parte* application for § 1782 discovery and authorizing issuance of a document subpoena).

**I.    VESTOLIT AND CELANESE'S APPLICATION SHOULD BE GRANTED BECAUSE IT SATISFIES THE REQUIREMENTS OF 28 U.S.C. § 1782**

"When presented with a § 1782(a) application, a court 'first decides whether the statutory requirements are met.'"  *In re Storag Etzel GmbH*, 613 F. Supp. 3d 813, 814 (D. Del. 2020) (quoting *In re Biomet Orthopaedics Switz. GmbH*, 742 F. App'x 690, 694 (3d Cir. 2018)).  Title 28 U.S.C. § 1782, provides in relevant part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . .  The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

28 U.S.C. § 1782(a).  Put succinctly, "[t]he three statutory requirements under § 1782 dictate that [1] the party from whom discovery is sought must reside or be found in the district; [2] the discovery must be for use in a proceeding before a foreign tribunal; and [3] the application must be made by an interested person."  *In re Nokia Techs. Oy*, No. 23-01395-GBW, 2024 U.S. Dist. LEXIS 70832, at *4 (D. Del. Apr. 18, 2024).  "The party opposing discovery sought under § 1782 has the burden of demonstrating any facts warranting the denial of a particular application."  *In re Vienna*, No. 23-mc-258-CFC, 2023 U.S. Dist. LEXIS 171349, at *5 (D. Del. Sep. 26, 2023) (citing *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 190 (3d Cir. 1999)).

"Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel*, 542 U.S. at 247. The Third Circuit has observed that § 1782 "'was designed to facilitate the conduct of litigation in foreign tribunals, improve international cooperation in litigation, and put the United States into the leadership position among world nations in this respect.'" *In re Biomet Orthopaedics*, 742 F. App'x at 695 (quoting *In re Bayer AG*, 146 F.3d 188, 191-92 (3d Cir. 1998)). "Consistent with [§ 1782's] modest prima facie elements and Congress's goal of providing equitable and efficacious discovery procedures, district courts should treat relevant discovery materials sought pursuant to § 1782 as discoverable unless the party opposing the application can demonstrate facts sufficient to justify the denial of the application." *In re Bayer AG*, 146 F.3d at 195. "If the statutory requirements are met, the court has discretion to grant the moving party's § 1782 application." *In re Nokia Techs Oy* at *4 (citing *Intel*, 542 U.S. at 264-65); *see also In re Naranjo*, 768 F.3d 332, 347 (4th Cir. 2014) ("Section 1782 affords the district courts wide discretion in responding to requests for assistance in proceedings before foreign tribunals.") (citation omitted). Vestolit and Celanese's Application satisfies all three requirements of § 1782 and should be granted.

### A.    Shell Chemical Resides in the District of Delaware

Shell Chemical "resides" in the District of Delaware for purposes of § 1782 because its place of incorporation is the State of Delaware. *See* the Gidley Declaration, Ex. 4 (Shell Chemical LP Entity Detail – Delaware Division of Corporations). The Application therefore satisfies § 1782's first statutory condition. *See In re Vienna,* 2023 U.S. Dist. LEXIS 171349, at *5-6 (concluding that a Delaware corporation "resides within this district for § 1782 purposes").

### B.    The Requested Discovery Is "For Use In" a Foreign Court Proceeding

The requested discovery is "for use in" the ongoing Dutch Proceeding, which constitutes a

14

"proceeding in a foreign or international tribunal" within the meaning of § 1782. *See, e.g.*, Order, *In re: Letter Request from The Netherlands*, No. 1:24-cv-00861-GBW (D. Del. Jul. 29, 2024), Dkt. No. 9 (holding that discovery sought was "for use" in anticipated Dutch proceedings); *In re Upper Brook Cos.*, No. 22-mc-97, 2022 U.S. Dist. LEXIS 231242, at *10-17 (S.D.N.Y. Dec. 23, 2022) (similar); *In re Miya Water Projects Netherlands B.V.*, No. 23-00391, 2023 U.S. Dist. LEXIS 198201, at *12-17 (D.P.R. Nov. 3, 2023) (similar). Vestolit's Dutch counsel has provided this Court with a detailed declaration describing the ongoing Dutch Proceeding, as well as the material relevance to the Dutch Proceeding of the information and documents that Vestolit and Celanese seek to uncover through this Application. *See* Cornelissen Decl. ¶¶ 39-43. Vestolit and Celanese are willing to enter into an appropriate confidentiality agreement that limits the use of the materials to the Dutch Proceeding.

### C. Vestolit and Celanese are Each an "Interested Person" Because They are Parties in the Dutch Proceeding

Vestolit and Celanese are each an "interested person" within the meaning of § 1782 because they are defendants in the ongoing Dutch Proceeding. *See* Cornelissen Decl. ¶ 2. As parties in the Dutch Proceeding, Vestolit and Celanese have a clear interest in the foreign litigation and the evidence available for use therein. *See, e.g.*, *Intel*, 542 U.S. at 256 ("No doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782."). Vestolit and Celanese have also satisfied this statutory condition.

## II. ALL FOUR *INTEL* DISCRETIONARY FACTORS COUNSEL IN FAVOR OF GRANTING THE APPLICATION

Because the mandatory statutory requirements of § 1782 are met, the Court "may order" the requested discovery. 28 U.S.C. § 1782. In *Intel*, the U.S. Supreme Court articulated four discretionary factors that "bear consideration in ruling on a § 1782(a) request":

(1) whether the persons from whom the discovery is being sought are participants in the foreign proceeding;

(2) the nature and character of the foreign proceeding and the receptivity of the foreign tribunal to U.S. federal court judicial assistance;

(3) whether the request is an attempt to circumvent foreign proof-gathering limitations; and

(4) whether the discovery sought is unduly burdensome.

542 U.S. at 264-65.  "A court should apply these factors in support of § 1782's 'twin aims' of 'providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts.'" *Biomet Orthopaedics*, 742 F. App'x at 696 (quoting *Intel*, 542 U.S. at 252).  Here, each of the *Intel* factors weighs in favor of granting the Application.

### A.    Shell Chemical Is Not a Direct Participant in the Dutch Proceeding

Although a real party in interest, the discovery target here—Shell Chemical—is not a formal party in the Dutch Proceeding.  *See* Cornelissen Decl. ¶¶ 37-39.   As the Court explained in *Intel*, "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence."  542 U.S. at 264.  However, "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid."  *Id.*  Indeed, where discovery is sought from entities that are not parties/participants in the foreign U.S. proceedings, courts have found that evidence in the United States may be unavailable absent § 1782 relief, a factor that supports granting § 1782 discovery.  *See, e.g.*, *In re O'Keeffe*, 646 F. App'x 263, 266 (3d Cir. 2016) (affirming grant of § 1782 application where the party subject to discovery was not a participant in the foreign litigation); *see also In re Servicio Pan Americano de Proteccion*, 354 F. Supp. 2d 269, 274 (S.D.N.Y. 2004) (finding that the first *Intel* factor weighed in favor of granting § 1782

discovery where the foreign court could not order the discovery target to produce the information sought).

### B.    The Dutch Court Would Be Receptive to Information Obtained Pursuant to 28 U.S.C. § 1782

The Dutch court will likely be receptive to any information obtained by this Application. As U.S. district courts have recognized, "Dutch law permits the submission of evidence collected through section 1782," and Dutch courts are generally receptive to evidence obtained through § 1782 proceedings. *In re Hulley Enter. Ltd.*, 358 F. Supp. 3d 331, 347 (S.D.N.Y. 2019), *R. & R. adopted by*, 400 F. Supp. 3d 62 (S.D.N.Y. 2019); *see also In re OOO Promneftstroy*, 134 F. Supp. 3d 789, 792 (S.D.N.Y. 2015) (similar). Under Dutch procedural law, Vestolit and Celanese have the "right to submit evidence in any form not expressly prohibited by law," and "there are no Dutch rules of discovery, privilege, or otherwise, that would prevent Vestolit and Celanese from obtaining or relying on the evidence sought in their application to the United States courts." Cornelissen Decl. ¶ 41. Indeed, Dutch courts have expressly held that evidence obtained through § 1782 proceedings in U.S. courts may be used in Dutch proceedings. Cornelissen Decl. ¶ 42 (discussing Dutch case law).

In any case, the second *Intel* factor weighs against ordering discovery only if there is "authoritative proof" that the Dutch court would reject the evidence Vestolit and Celanese seek. Specifically, Shell Chemical would need to "present authoritative proof that the foreign court would reject the evidence obtained with the aid of Section 1782." *In re O'Keeffe*, 646 F. App'x at 266-68 (internal quotation marks omitted). This inquiry does not require that "district courts [] determine whether particular evidence would be admissible in a foreign court." *Id.* at 267. Instead, the Supreme Court in *Intel* instructed the inquiry is "more generally the receptivity" of the foreign court to "'U.S. federal-court judicial assistance.'" *Id.* (quoting *Intel*, 542 U.S. at 264). As

discussed above and in the Cornelissen Declaration (¶ 42), there is no doubt that Dutch courts are generally receptive to considering evidence obtained through § 1782. Accordingly, the second *Intel* factor also weighs in favor of granting the Application.

### C.    Vestolit and Celanese's Request Is Not an Attempt To Circumvent Proof-Gathering Limitations under Dutch Law

Vestolit and Celanese's Application is not an attempt to circumvent any applicable proof-gathering limitations under Dutch law. *Intel*, 542 U.S. at 264-65. U.S. courts have explained that a discovery proponent is not seeking to circumvent foreign discovery limitations merely because it requests information through § 1782 that it has been unable to obtain abroad, particularly because § 1782 "contains no foreign-discoverability requirement." *Mees v. Buiter*, 793 F.3d 291, 303 (2d Cir. 2015); *see also In re Bloomfield Inv. Res. Corp.*, No. 18-mc-2608, 2018 U.S. Dist. LEXIS 206338, at *15-16 (E.D.N.Y. Dec. 6, 2018) ("The fact that" the § 1782 proponent "could not obtain discovery from respondent through the Dutch court system does not indicate an attempt to circumvent restrictions."). In fact, "in some respects, that is precisely the type of assistance that [§ 1782] was designed to afford." *In re Gemeinshcaftspraxis Dr. Med. Schottdorf*, No. 19-cv-88, 2006 U.S. Dist. LEXIS 94161, at *25 (S.D.N.Y. Dec. 29, 2006).

Here, Vestolit and Celanese seek in good faith the discovery of relevant information from Shell Chemical to support their defenses and potential counterclaims in the foreign proceeding. As discussed above, because Shell Chemical is neither a Dutch entity nor a formal party in the Dutch Proceeding—as well as SCE's admission that it is systematically destroying documents within the relevant period—seeking to obtain this information directly from Shell Chemical where it is located in the United States is appropriate to allow Vestolit and Celanese to timely and fully exercise their rights of defense. Cornelissen Decl. ¶¶ 2, 28-39.

### D.    Vestolit and Celanese's Targeted Discovery Requests Are Not Unduly Intrusive or Burdensome

Vestolit and Celanese's targeted discovery requests seek only information that is relevant to their defenses and potential counterclaims in the Dutch Proceeding.  As discussed above (*see supra* Background, Section F), the proposed document requests and topics for examination in the subpoenas are narrowly tailored to obtain highly relevant information that concerns Shell Chemical's involvement in the Dutch Proceeding and relationship with SCE, as well as substantive issues concerning Shell's involvement in the ethylene and ethylene derivatives markets.  *See also* Gidley Declaration, Exs. 1-3.  This evidence is critical to Vestolit and Celanese's arguments in the Dutch Proceeding, including as to Vestolit's and Celanese's anticipated defenses (or possible counterclaims) concerning SCE's claims and calculation of alleged damages, including that Shell Chemical possibly passed along its alleged damages suffered to its own purchasers.

To the extent that Vestolit and Celanese's reasonable discovery requests impose any incidental burdens on Shell Chemical, those burdens would be minimal and proportionate, as the requested documents should be readily available in electronic or hard-copy files.  Vestolit and Celanese's deposition subpoenas likewise do not pose an unreasonable burden on Shell Chemical. As noted, Shell Chemical's President, Marla Kline, signed the Shell Chemical Mandate Agreement, and therefore has substantive knowledge of that agreement and Shell Chemical's relationship with SCE.  In a similar vein, Shell Chemical—a self-described producer of billions of pounds of chemicals, including ethylene and ethylene-related products (*see supra* n. 2)—certainly can produce a Rule 30(b)(6) witness with relevant knowledge of Shell Chemical's involvement in the global markets for ethylene and ethylene derivatives.  In the spirit of professional courtesy and cooperation, Vestolit and Celanese are more than willing to engage in a good faith meet and confer with Shell Chemical as to the scope of requested discovery and any reasonable confidentiality

protections.  In any event, any burden on Shell Chemical, a real party in interest to the Dutch Proceeding, is outweighed by the central importance of the requested information to the Dutch Proceeding and the prejudice Vestolit and Celanese will face in defending against a US\$ 1.2 billion claim brought on Shell Chemical's behalf without such information.

## <u>CONCLUSION</u>

For the foregoing reasons, Vestolit and Celanese respectfully request that the Court grant their *ex parte* Application for an Order under 28 U.S.C. § 1782 to obtain discovery from Shell Chemical, and grant Vestolit and Celanese leave to serve the subpoenas attached as Exhibits 1-3 to the Gidley Declaration.

Dated: December 20, 2024

Respectfully submitted,

HEYMAN ENERIO
GATTUSO & HIRZEL LLP

*Of Counsel:*

**WHITE & CASE**
J. Mark Gidley
J. Frank Hogue
Jaclyn Phillips
Alec Albright

701 13th Street N.W.
Washington, D.C. 20005
Phone:     (202) 626-3600
Fax:         (202) 639-9355
mgidley@whitecase.com
fhogue@whitecase.com
jaclyn.phillips@whitecase.com
alec.albright@whitecase.com

*Of Counsel for Applicant Vestolit GmbH*


*Of Counsel:*

WACHTEL, LIPTON, ROSEN & KATZ
Graham W. Meli
51 West 52 Street
New York, NY 10019
Phone:  (212) 403-1000
Fax:  (212) 403-2000
gwmeli@wlrk.com

*Of counsel for Applicant Celanese Europe B.V.*

*/s/ Samuel T. Hirzel, II*
Samuel T. Hirzel, II (# 4415)
Elizabeth A. DeFelice (#5474)
300 Delaware Avenue, Suite 200
Wilmington, DE 19801
(302) 472-7300
shirzel@hegh.law
edefelice@hegh.law

*Counsel for Applicants Vestolit GmbH and*
*Celanese Europe B.V.*