# Exhibit 2

Declaration of J. Mark Gidley

December 20, 2024

# UNITED STATES DISTRICT COURT
for the
_____ District of _____

| | ) | |
|---|---|---|
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| | ) | |
| *Defendant* | ) | |

**SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION**

To:

*(Name of person to whom this subpoena is directed)*

❒ Testimony: YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:

| Place: | Date and Time: |
|---|---|
| | |

The deposition will be recorded by this method:

❒ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

*CLERK OF COURT*

OR

_____     _____
*Signature of Clerk or Deputy Clerk*        *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
_____ , who issues or requests this subpoena, are:

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.

# PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re Application of<br><br>VESTOLIT GMBH<br><br>and<br><br>CELANESE EUROPE B.V.,<br><br>      *Applicants*,<br><br>To Obtain Discovery for Use in a<br>Foreign Proceeding Pursuant to<br>28 U.S.C. § 1782 | Misc. Action No. _____ |

**DEPOSITION SUBPOENA ATTACHMENT 1**

**DEFINITIONS**

1. "Cracker Margin" means a calculation of the profitability of producing ethylene and its co-products based on difference between the input costs of production, including the prices of feedstock, and the sales price of ethylene and its co-products.

2. "CNOOC Joint Venture" means the joint venture between CNOOC and Shell founded in 2000, including to build and operate an ethylene plant, as described in ASIA FINANCIAL, May 18, 2020 ("Founded in 2000, the CNOOC and Shell Petrochemical Company is one of the largest chemical joint ventures of Royal Dutch Shell in China. . . . The joint venture had produced almost 15 million tonnes of ethylene with a net profit of more than 20 bn yuan by the end of last [year], according to CNOOC Chairman Wang Dongjin").

3. "Commission Settlement Decision" means the decision of the European Commission

1

in AT.40410 – Ethylene (C/2020/4817) in 2021, which is relied upon by SCE in the Dutch Proceedings.

4. "Document" means any written, typed, printed, recorded, or graphic matter of any kind, including but not limited to: electronically stored information, letters or other correspondence, memoranda, e-mail, notations, reports, analyses, summaries, charts, graphs, studies, tabulations, statements, notes, notebooks, work papers, press releases, minutes of meetings or conferences, transcripts of telephone conversations, transcripts of testimony, cost sheets, financial reports, accountants' work papers, opinions or reports of consultants, checks (front and back), check stubs, receipts, contracts, agreements, tape recordings, videos, drafts of any of the foregoing, and all similar material.

5. "Dutch Proceeding" means the antitrust legal proceedings initiated on 20 March 2023 by SCE against Vestolit and other companies before the District Court of Amsterdam seeking to recover alleged damage.

6. "Ethylene Buyers" refers to purchasers of ethylene in the merchant market.

7. "Ethylene Sellers" refers to entities selling ethylene in the merchant market.

8. "Ethylene-specific Margins" means Your calculation of the gross margin for producing and selling ethylene on a stand-alone basis, i.e., the difference between production costs (including input costs such as naphtha) and the sales price of ethylene.

9. "HPEO" means high-purity ethylene oxide.

10. "HPEO-specific Margins" means Your calculation of the gross margin for producing and selling each of the HPEO products on a stand-alone basis, i.e., the difference between production

costs (including input costs such as ethylene) and the sales price of HPEO.

11. "HODer" means higher olefins and derivatives products, including linear alpha and internal olefins ("NEODENE"), detergent alcohols and ethoxylates ("NEODOL"), plasticizer alcohols ("LINEVOL"), and drilling fluids ("NEOFLO").

12. "HODer-specific Margins" means Your calculation of the gross margin for producing and selling each of the HODer products on a stand-alone basis, i.e., the difference between production costs (including input costs such as ethylene) and the sales price of HODer.

13. "Industry Reports" means Documents that provide information about the ethylene industry, including but not limited to information about industry performance and trends in supply and demand.

14. "MCP" means Monthly Contract Price, an industry price reference, used as part of the pricing formula contained in some supply agreements relating to the sale of ethylene, and resulting from individual negotiations between certain Ethylene Buyers and Ethylene Sellers.

15. "Mediterranean Europe" means Southern France, Spain, and Italy, as defined in the ICIS report titled "Ethylene Methodology," submitted (along with the Shell Damages Memorandum) as an attachment to the October 18, 2023, letter sent by Baker & McKenzie Amsterdam N.V. on behalf of Shell Chemicals Europe B.V.

16. "Meeting" refers to the contemporaneous presence of natural persons, including in person or by telephone or videoconference, whether such presence was by chance or prearranged, whether the meeting was formal or informal, and whether it occurred in connection with some other activity.

17. "Minutes" include, without limitation, any formal or informal Document referring to

information conveyed in, or recording discussions or decisions taken at, such Meeting, as well as resolutions, recitations, or other material, whether or not adopted by written consent.

18. "Naphtha" means the main raw material used in ethylene production.

19. "Natural Gas" means any feed utilized to produce ethylene that You use in lieu of Naphtha, including, but not limited to, ethane, propane, butane, or gas oil.

20. "North-West Europe" means Belgium, France, Germany, and the Netherlands, as defined as the relevant market in the Commission Settlement Decision.

21. "Person" means any natural person or any business, legal or governmental entity, or association.

22. "Propylene-specific Margins" means Your calculation of the gross margin for producing and selling propylene on a stand-alone basis, i.e., the difference between production costs (including input costs such as naphtha) and the sales price of propylene.

23. "Relating to" means referring to, alluding to, responding to, pertaining to, in connection with, commenting on, concerning, in respect of, about, regarding, reflecting, discussing, showing, describing, mentioning, analyzing, constituting, evidencing, supporting, prepared in connection with, or used in preparation for.

24. "Relevant Period" means January 1, 2010, to the date of these Requests.

25. "SCE" means Shell Chemicals Europe B.V., the Plaintiff in the Dutch Proceedings.

26. "Shell Damages Memorandum" means the Shell Chemicals Europe Cartel Damages Calculation Memorandum dated October 11, 2023, and submitted as an attachment to the October 18, 2023, letter sent by Baker & McKenzie Amsterdam N.V. on behalf of SCE.

27. "Shell," "You" or "Your" means Shell Chemical LP and its wholly or partially owned

4

subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all directors, officers, members, employees, agents, consultants, and other persons working for or on behalf of the foregoing, and any related companies, agents, employees, representatives, and all other Persons acting, or who have acted, on Shell Chemical LP's behalf.

28. "North-East Asia" means, as defined in the Shell Damages Memorandum, the North-East Asia countries of Taiwan, Korea, Japan, and China.

29. "South-East Asia" means, as defined in the Shell Damages Memorandum, the South-East Asia countries of Singapore, Philippines, Indonesia, Malaysia, Thailand and Vietnam.

30. "Trade Associations" means groups of companies in the ethylene industry that collaborate on industry standards, regulatory issues, and advocacy efforts. The terms "Trade Associations," "Industry Associations," and "Industrial Associations" may be used interchangeably. Trade Associations include, but are not limited to:

- British Chemical Association (CIA)
- British Plastics Federation
- Dutch Chemical Association (VNCI)
- European Chemical Association (CEFIC)
- European Chemical Transport Association (ECTA)
- European Fuel Oxygenates Association (EFOA)
- European Petrochemical Association
- Gulf Petrochemicals and Chemicals Association
- International Methanol Producers and Consumer Association
- Italian Chemical Association (Federchimica)
- Petrochemicals Europe
- Plastics Europe
- Spanish Chemical Association (Feique)

31. "Trade Shows" means conventions, conferences, exhibitions, and gatherings at which Ethylene Sellers, Ethylene Buyers, and other professionals in the ethylene industry exchange

5

knowledge, network, and promote their products and services.  Trade Shows include, but are not limited to:

- ESF Europe
- Ethylene Middle East Technology Conference
- Ethylene Producer's Conference
- European Ethylene Producer's Committee Conference
- International LNG Forum
- LNG Export Conference & Exhibition
- Technip Ethylene Forum

32. Words in the singular form shall be construed as also including the plural form, and vice-versa.

## INSTRUCTIONS

1. Petitioners hereby advise You that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure ("Rule 30(b)(6)"), You have a "duty to confer with the serving party and to designate each person who will testify."  Rule 30(b)(6) states in its entirety as follows:

> *Notice or Subpoena Directed to an Organization.* In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. The named organization must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. Before or promptly after the notice or subpoena is served, the serving party and the organization must confer in good faith about the matters for examination. A subpoena must advise a nonparty organization of its duty to confer with the serving party and to designate each person who will testify. The persons designated must testify about information known or reasonably available to the organization. This paragraph (6) does not preclude a deposition by any other procedure allowed by these rules.

2. Petitioners reserve the right to supplement and/or modify the list of Rule 30(b)(6) topics after documents have been produced by You in response to the requests in the Documents Subpoena Attachment 1.  *See* Gidley Declaration, Exhibit 1.

6

## DEPOSITION TOPICS

You shall testify concerning:

### Mandates/Authorizations of SCE to Pursue the Dutch Damages Action

1. The mandates or authorizations provided to SCE by You or any other Shell affiliate in connection with SCE's initiation of the Dutch Proceedings, as described in Your Mandate Agreement attached as Annex 1 to SCE's letter of 11 November 2024 re: Shell Mandates (Attached as **Exhibit 8** to the Cornelissen Declaration).

### SCE – Relationship and Contracts Related to SCE's Damages

2. The basis upon which You or SCE asserts either company suffered any damages as part of the claims brought by SCE in the Dutch Proceedings, including but not limited to:

    - Your transactions with SCE involving HODer, HPEO, ethylene, or ethylene derivatives, including as to margins, mark ups, transportation costs or other fees;
    - All Documents relating to the Shell Damages Memorandum; and
    - Communications between Shell Chemical LP's directors, officers, and employees relating to the Dutch Proceeding or the Commission Settlement Decision.

### Shell's Cracker Margins

3. Cracker Margins in the industry in each of North America, North-West Europe, Mediterranean Europe, North-East Asia, and South-East Asia, and Your analysis of those Cracker Margins.

4. Your Cracker Margin in each of North America, North-West Europe, Mediterranean

Europe, North-East Asia, and South-East Asia.

### Ethylene Derivatives Pricing and Ethylene Derivative-specific Margins

5. Your costs by month to produce Your HODer and HPEO products.

6. Your sales price by month and by customer (including to SCE) for Your HODer and HPEO products.

7. Your HODer- and HPEO-specific Margins by month in each of North America, North-West Europe, Mediterranean Europe, North-East Asia, and South-East Asia.

8. Your HODer and HPEO products sold or otherwise transferred or conveyed to SCE, including, but not limited to, any analysis of Shell's internal transfer pricing.

### Ethylene Pricing and Ethylene-specific Margins

9. The ethylene pricing that Shell obtained around the world, including in each of North America, North-West Europe, Mediterranean Europe, North-East Asia, and South-East Asia.

10. Your global monitoring and benchmarking of ethylene pricing against Your competitors and against the prevailing market, through industry surveys, publications, and databases, including in North America, North-West Europe, Mediterranean Europe, North-East Asia, and South-East Asia.

11. The ethylene market in each of North America, North-West Europe, Mediterranean Europe, North-East Asia, and South-East Asia, including but not limited to:

    - The number of Ethylene Buyers in each region;
    - The quantities of ethylene purchased by each Buyer in each region;
    - The purchase price by each Buyer in each region; and

8

- Your Ethylene-specific Margins in each region by month and Your analysis of the same.

### Propylene-specific Margins

12. Your Propylene-specific Margins by month in each of North America, North-West Europe, Mediterranean Europe, North-East Asia, and South-East Asia, and Your analysis of the same.

### Shell's Use of MCP

13. Your analysis of, strategy for, and use of, MCP for Your pricing and sales for HODer, HPEO, ethylene, or ethylene derivatives, including but not limited to Your analysis relating to Shell's negotiation of spreads to MCP in contracts and how those spreads changed over time or varied by customer.

14. Your analysis of whether to base Your prices for HODer, HPEO, ethylene, or ethylene derivatives on MCP or any alternative, such as the spot price.

15. Your analysis of the relationship, if any, between MCP and the prices of HODer, HPEO, ethylene, or ethylene derivatives in each of North America, North-West Europe, Mediterranean Europe, North-East Asia, and South-East Asia.

### Shell Chemical Pass On – Input Purchase Pricing and Margins of Feedstock for Ethylene Derivative (HODer and HPEO)

16. Your purchase price by month of ethylene inputs such as Naphtha or Natural Gas, both from any other Shell entities and from third parties, in each of North America, North-West Europe, Mediterranean Europe, North-East Asia, and South-East Asia.

17. Your analysis of Your Naphtha or Natural Gas-specific Margins in each of North America,

9

North-West Europe, Mediterranean Europe, North-East Asia, and South-East Asia.

18. Your analysis of Your HODer- and HPEO-specific Margins in each of North America, North-West Europe, Mediterranean Europe, North-East Asia, and South-East Asia.

### **CNOOC Joint Venture And Impact on Asia Financials**

19. Your profits from the CNOOC Joint Venture and its impact on Your Ethylene-specific Margins and Propylene-specific Margins in North-East Asia, including, but not limited to:

    - All annual financial statements for the CNOOC Joint Venture in China;
    - Trends in demand in China; and
    - Your analysis of the same.

### **Competitor Contacts, Industry Reports, and Document Hold**

20. Your attendance at, and/or participation in, Trade Associations or Trade Shows related to HODer, HPEO, ethylene, and ethylene derivates.

21. Industry Reports relied on by You for developing or implementing the pricing of HODer, HPEO, ethylene, or ethylene derivatives.

22. The Document retention policies, practices, and procedures of Shell Chemical LP and Your agent, SCE, along with any Document holds relating to Your claims against the Ethylene Defendants in the Dutch Proceedings.