UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re Application of<br><br>VESTOLIT GMBH<br><br>and<br><br>CELANESE EUROPE B.V.,<br><br>*Applicants*,<br><br>To Obtain Discovery for Use in a<br>Foreign Proceeding Pursuant to<br>28 U.S.C. § 1782 | Misc. Action No. 24-cv-01401-CFC |

## **RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE**

**WHITE & CASE**
J. Mark Gidley (*Pro hac vice*)
J. Frank Hogue (*Pro hac vice*)
Jaclyn Phillips (*Pro hac vice*)
Alec Albright (*Pro hac vice*)
701 13th Street, NW
Washington, DC 20005
(202) 626-3600
mgidley@whitecase.com
fhogue@whitecase.com
jaclyn.phillips@whitecase.com
alec.albright@whitecase.com

*Of Counsel for Applicant Vestolit GmbH*

**HEYMAN ENERIO GATTUSO & HIRZEL LLP**
Samuel T. Hirzel, II (# 4415)
Elizabeth A. DeFelice (#5474)
300 Delaware Avenue, Suite 200
Wilmington, DE 19801
(302) 472-7300
shirzel@hegh.law
edefelice@hegh.law

*Counsel for Applicants Vestolit GmbH and Celanese Europe B.V.*

**WACHTELL, LIPTON, ROSEN & KATZ**
Graham W. Meli (*Pro hac vice*)
51 West 52nd Street
New York, NY 10019
(212) 403-1000
gwmeli@wlrk.com

*Of Counsel for Applicant Celanese Europe B.V.*

Dated: January 28, 2025

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................1

BACKGROUND ..............................................................................6

    A.    The Mandate Agreement .......................................................6

    B.    Vestolit and Celanese's § 1782 Application and Supporting Papers....7

I.    SECTION 1782 PERMITS THIS COURT TO ISSUE THE
REQUESTED SUBPOENA SEEKING MS. KLINE'S DEPOSITION ......11

II.    EVEN IF THE COURT DENIES THE APPLICATION TO SERVE
THE KLINE SUBPOENA, IT SHOULD GRANT THE
REMAINDER OF THE APPLICATION ....................................................16

CONCLUSION ..............................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Cerciello v. Canale*,
  563 F. App'x 924 (3d Cir. 2014) .......................................................................15

*Euromepa S.A. v. R. Esmerian, Inc.*,
  51 F.3d 1095 (2d Cir. 1995) ..........................................................................5, 18

*Heraeus Kulzer, GmbH v. Biomet, Inc.*,
  633 F.3d 591 (7th Cir. 2011) ............................................................................18

*In re Aso*,
  No. 19-mc-190, 2019 WL 3244151 (S.D.N.Y. July 19, 2019) ..........................17

*In re Biomet Orthopaedics Switz. GmbH*,
  742 F. App'x 690 (3d Cir. 2018) ..................................................................14, 18

*In re Chevron Corp.*,
  633 F.3d 153 (3d Cir. 2011) .............................................................................17

*In re del Valle Ruiz*,
  342 F. Supp. 3d 448 (S.D.N.Y. 2018) ...............................................................17

*In re del Valle Ruiz*,
  939 F.3d 520 (2d Cir. 2019) .......................................................................13, 14

*In re Edelman*,
  295 F.3d 171 (2nd Cir. 2002) ..........................................................................16

*In re Eli Lilly & Co.*,
  37 F.4th 160 (4th Cir. 2022) ............................................................................14

*In re Ex Parte Application of Eni S.p.A. for an Ord. Pursuant to
  28 U.S.C. § 1782*, No. 20-mc-334-MN, 2021 WL 1063390
  (D. Del. Mar. 19, 2021) ..............................................................................19, 20

*In re Ferrer*,
  No. 18-cv-20226, 2018 WL 3240010 (S.D. Fla. July 3, 2018),
  *on reconsideration in part*, No. 18-cv-20226, 2018 WL 4575043
  (S.D. Fla. Sept. 5, 2018) ...................................................................................15

*In re Frasers Grp. PLC*,
    No. 23-cv-22795, 2024 WL 139488 (D.N.J. Jan. 12, 2024) .............................14

*In re Liverpool Ltd. P'ship*,
    No. 21-mc-86-CFC, 2021 WL 3793901 (D. Del. Aug. 26, 2021) ....................19

*In re Polygon Glob. Partners LLP*,
    No. 21-mc-364, 2021 WL 2117397 (S.D.N.Y. May 25, 2021).........................15

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004).........................................................................................5, 18

*LAE Techs. Hong Kong Ltd. v. Demuren*,
    No. 23-cv-2314, 2024 WL 863464 (D.N.J. Feb. 29, 2024).........................19, 20

## STATUTES AND RULES

28 U.S.C. § 1782 ..................................................................................................*passim*

ABA Model Rule 1.0 ........................................................................................................3

ABA Model Rule Rule 3.3...........................................................................................3, 10, 19

Fed. R. Civ. P. 45 ..........................................................................................................16

## PRELIMINARY STATEMENT

On December 20, 2024, Vestolit GmbH ("Vestolit") and Celanese Europe B.V. ("Celanese") filed an *ex parte* application pursuant to 28 U.S.C. § 1782 seeking authorization to serve discovery requests on Shell Chemical LP ("Shell Chemical"). On January 14, 2025, the Court directed Vestolit and Celanese to "show cause why, given the manner in which" their *Ex Parte* Application for an Order Granting Leave to Obtain Discovery Under 28 U.S.C. § 1782 for Use in a Foreign Proceeding (D.I. 1) (the "Application") "was presented to the Court, the Application should not be denied in toto." Mem. Order 6 (D.I. 11).

Counsel for Vestolit and Celanese sincerely apologize that the Application and accompanying Proposed Order (D.I. 1-1) and Memorandum of Law ("MOL") (D.I. 5) did not clearly communicate all the information that was necessary for the Court to assess their request for § 1782 discovery from Marla Kline, President of Shell Chemical. Undersigned counsel recognize such clarity is particularly important in *ex parte* proceedings.

Vestolit and Celanese acknowledge that they should have made clear on the face of the Application and accompanying Proposed Order that they were making a specific request to depose Shell Chemical's President, Ms. Kline, who signed the Shell Chemical Mandate Agreement (D.I. 7-7) (the "Mandate Agreement"). With the benefit of the Court's Memorandum Order, Vestolit and Celanese also

acknowledge that they should have clearly addressed the legal issue of why Ms. Kline, as President of Shell Chemical, a Delaware entity, can be "found" in this District under 28 U.S.C. § 1782(a).

Vestolit and Celanese did not intend to conceal information from or mislead the Court through these oversights. They thought it appropriate to seek a subpoena for Ms. Kline's deposition under § 1782 from this Court.

Vestolit and Celanese sought to root their discovery requests, including for Ms. Kline's deposition, in the facts of which they were aware at the time. Shell Chemicals Europe B.V. ("SCE"), the named plaintiff in the underlying Dutch Proceeding, purported to have received mandates to sue on behalf of certain affiliates—*i.e.*, sue in SCE's own name for the alleged "damages that may have been transferred to affiliate entities of the Shell group." Mandate Agreement 1 (D.I. 7-7).[1] In correspondence dated November 11, 2024 (D.I. 7-9), SCE disclosed the post-suit Mandate Agreement, signed in late 2024. MOL 2, 9-10. While the agreement was notarized in Texas, it stated that it was executed "by Marla Kline, President of Shell Chemical LP, a Delaware limited partnership, on behalf of said partnership." Mandate Agreement 3 (D.I. 7-7); *see* also MOL 12, 19. The Mandate Agreement is highly relevant to SCE's claim in the Dutch Proceeding—where SCE seeks EUR

---

[1]    *See also* Decl. of H.M. Cornelissen in Supp. of *Ex Parte* Appl. for Disc. Pursuant to 28 U.S.C. § 1782 ("Cornelissen Decl.") (D.I. 7) at ¶¶ 33-34.

204 million in damages attributed to SCE's sale of Shell Chemical's higher olefin and derivates products. MOL 7; Cornelissen Decl. ¶ 19 (explaining that these damages are subset of SCE's total claimed damages of more than $1.2 billion).

Consistent with counsel's obligation under ABA Model Rule 3.3(d) to "inform" this Court of "all material facts known to the lawyer that will enable [the Court] to make an informed decision, whether or not the facts are adverse," counsel provided the Court the material facts known to them at the time that they reasonably believed were necessary to enable the Court to make an informed decision. ABA Model Rule 3.3(d); *see also* ABA Model Rule 1.0 ("'[K]nown' . . . denotes actual *knowledge* of the *fact* in question.").

Specifically, Vestolit and Celanese twice referenced in the Memorandum of Law that they were seeking a deposition from Ms. Kline, stating the grounds why the requested testimony would be relevant—although, in retrospect, such information should have been disclosed earlier and in greater detail. *See* MOL 12 ("[A]pplicants seek a subpoena for deposition testimony from Shell Chemical's President Marla Kline, who signed the Shell Chemical Mandate Agreement."); *id.* at 19 ("As noted, Shell Chemical's President, Marla Kline, signed the Shell Chemical Mandate Agreement, and therefore has substantive knowledge of that agreement and Shell Chemical's relationship with SCE."). Vestolit and Celanese attached the Mandate Agreement as Exhibit 7 to the Cornelissen Declaration.

Vestolit and Celanese assumed, without addressing, that the subpoena naming Ms. Kline as President of Shell Chemical was proper under § 1782 because Shell Chemical is a Delaware entity.  Vestolit and Celanese now recognize that they should have identified the legal issue of whether Ms. Kline, in her capacity as President of Shell Chemical, is "found" in this District under § 1782, instead of addressing only whether Shell Chemical is "found" here.

In response to the Court's Order, Vestolit and Celanese have conducted further analysis of the legal issue raised by the Court.  As set forth below, Vestolit and Celanese believe that Ms. Kline is "found" in this District for purposes of § 1782, regardless of where she resides.  Vestolit and Celanese seek to depose Ms. Kline only about matters relating to her service as President of Shell Chemical, a Delaware entity on whose behalf she executed the Mandate Agreement.  Taking discovery from the President of a Delaware entity about Delaware-related conduct is within the bounds of due process.  Although the Third Circuit and this District have not directly addressed the issue to our knowledge, precedent from the Second Circuit holds that the "found" requirement of § 1782 extends to the bounds of due process in this manner.

Vestolit and Celanese also appreciate the opportunity to show that the Application should not be denied in toto due to the presentation of the submissions concerning Ms. Kline.  As the Court acknowledged, "[t]he § 1782 statutory

conditions [] appear to be satisfied" for Shell Chemical and "the *Intel* factors . . . appear on balance to weigh in favor" of granting discovery directed at Shell Chemical. Mem. Order 3. Vestolit and Celanese's request for authorization to serve § 1782 discovery has not been made "in bad faith, for the purpose of harassment, or to unreasonably seek cumulative or irrelevant materials." *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1101 n.6 (2d Cir. 1995) (describing circumstances where denial of § 1782 application in toto could be appropriate).

Further, while Vestolit and Celanese's Application was made *ex parte*, Shell Chemical and Ms. Kline will have the opportunity to contest whether the § 1782 statutory elements and discretionary factors articulated in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), are satisfied here, among any other defenses or objections in response to the requested discovery. Vestolit and Celanese also remain willing to meet and confer about the venue for the depositions and the scope of requested discovery to avoid any unnecessary burdens. For example, Vestolit and Celanese would be willing to take Ms. Kline's deposition as a Rule 30(b)(6) witness, rather than individually, regarding the Mandate Agreement and any other topics as to which Shell Chemical designates her.

## BACKGROUND

### A.    The Mandate Agreement

Vestolit and Celanese seek Ms. Kline's testimony regarding the Mandate Agreement, under which Shell Chemical provided SCE with an "exclusive mandate":

> (i) To initiate court proceedings, including appeal and Supreme Court Appeal, against the Cartelists [defined to include Vestolit and Celanese] in its own name and for the account of [Shell Chemical], seeking recovery for damages caused by the Ethylene Cartel; and
>
> (ii) To reach an out-of-court settlement in its own name and for the account of [Shell Chemical] with a Cartelist or Cartelists for damages suffered by the Company as a result of the Ethylene Cartel.

D.I. 7-7 at 1-2 (Dutch language terms omitted). Correspondence from SCE's counsel dated November 11, 2024 (D.I. 7-9) confirmed that Shell Chemical is the manufacturer of products for which SCE claims EUR 204 million in damages in the Dutch Proceeding. *See* MOL 2, 9-10. Though Vestolit and Celanese had been evaluating § 1782 discovery against Shell's U.S. affiliates, including Shell Chemical, for some time, they only considered seeking discovery from Ms. Kline due to her involvement in signing the Mandate Agreement after SCE disclosed it in mid-November 2024.

SCE alleged in its writ of summons in the Dutch Proceeding that it had "(indirect) mandate[s]" to sue on behalf of its affiliates, Cornelissen Decl. ¶ 6, *i.e.*, to sue in SCE's own name but for the alleged "damages that may have been

6

transferred" to such affiliates, Mandate Agreement 1 (D.I. 7-7).  Vestolit, through its

Dutch Counsel, requested from SCE a list of all the then-"unnamed affiliates" on

whose behalf SCE purports to bring claims.  *See* MOL 7-8; Cornelissen Decl. ¶¶ 18-

21, 31.  In its November 11, 2024, response, SCE alleged that it had already received

mandates from its affiliates to sue the Defendants on their behalf.  D.I. 7-9 at 1.  SCE

attached four mandates—including the Mandate Agreement signed by Ms. Kline on

behalf of Shell Chemical.

### B.    Vestolit and Celanese's § 1782 Application and Supporting Papers

Vestolit and Celanese initiated this proceeding *ex parte* to seek authorization

to serve discovery requests on Shell Chemical and Ms. Kline pursuant to 28 U.S.C.

§ 1782.  Vestolit and Celanese filed a two-page Application describing their request

to "seek this Court's authorization to serve targeted document and deposition

subpoenas (attached in proposed form to the Gidley Declaration as Exhibits 1-3)

from respondent Shell Chemical."  Appl. 1.  In the Application itself, counsel for

Vestolit and Celanese did not expressly state that they also sought discovery from

Ms. Kline, Shell Chemical's President.  We should have specifically identified her.

Attached to the Application was a Proposed Order (D.I. 1-1) granting the

Application and granting leave to Vestolit and Celanese "to serve the subpoenas

seeking the production of documents and depositions in the forms attached to the

Declaration of J. Mark Gidley as Exhibits 1-3."   The subpoena to Ms. Kline was

Exhibit 3 to the Gidley Declaration.  The text of the Proposed Order did not reference that one of the subpoenas was to Ms. Kline as President of Shell Chemical, as it should have.

Vestolit and Celanese supported the Application with the twenty-page Memorandum of Law.  Vestolit and Celanese discussed the discovery they sought, including "a subpoena for deposition testimony from Shell Chemical's President Marla Kline, who signed the Mandate Agreement" on behalf of Shell Chemical. MOL 12.  Vestolit and Celanese stated that "Shell Chemical 'resides' in the District of Delaware for purposes of § 1782" because it is a Delaware-registered entity.  *Id.* at 14.

Vestolit and Celanese did not separately address whether Ms. Kline herself is "found" in this District because they assumed that Ms. Kline's role as President of Shell Chemical, a Delaware limited partnership, and signatory of the Mandate Agreement on behalf of that Delaware entity, rendered this District an appropriate jurisdiction for purposes of seeking a subpoena under § 1782.  It was not until Vestolit and Celanese had the benefit of this Court's Order that they considered whether it was necessary to separately assess where Ms. Kline personally was "found" for purposes of § 1782.

Vestolit and Celanese also noted the requested subpoena to Ms. Kline in discussing the fourth *Intel* factor—whether the discovery requests are unduly

intrusive or burdensome.    Specifically, Vestolit and Celanese focused here on whether the "deposition subpoenas . . . pose an unreasonable burden on Shell Chemical."  *Id.* at 19.   Vestolit and Celanese argued that the burden on Shell Chemical was proportionate because Ms. Kline "signed the Shell Chemical Mandate Agreement, and therefore has substantive knowledge of that agreement and Shell Chemical's relationship with SCE."  *Id.*

Vestolit and Celanese attached two attorney declarations to their Application and cited to them throughout the Memorandum of Law:   (1) The Cornelissen Declaration discussing the underlying Dutch Proceeding and certain issues of Dutch procedural law and attaching relevant documents related to the Dutch Proceeding (D.I. 7), and (2) the Gidley Declaration, which attached as Exhibits 1-3 the proposed subpoenas to be served and as Exhibit 4 Shell Chemical's proof of entity registration from the Delaware Department of State (D.I. 6).   The proposed subpoena to Ms. Kline (D.I. 6-3) was directed "[t]o: Marla Kline, President of Shell Chemical LP."

## ARGUMENT

Vestolit and Celanese sought relevant discovery in good faith from Shell Chemical and a deposition of Ms. Kline in her capacity as President of that entity and signatory of the Mandate Agreement on its behalf.   Vestolit and Celanese's request was based on "all material facts known" to counsel, ABA Model Rule 3.3(d), and that they "reasonably believe[d] [were] necessary to an informed decision" at

the time of the Application, (*id.* cmt. 14), including that Ms. Kline signed the Mandate Agreement in October 2024 on behalf of Shell Chemical as its President. Although the Mandate Agreement was notarized in Texas (*see* D.I. 7-7 at 3), Vestolit and Celanese did not separately address whether Ms. Kline (rather than Shell Chemical) was "found" in this District within the meaning of § 1782 given that Ms. Kline signed the agreement as "President of Shell Chemical LP, a Delaware limited partnership, on behalf of said partnership." *Id.*

The Court correctly identified deficiencies in the Application, but Vestolit and Celanese respectfully submit that the requirements for discovery under § 1782(a) are met, including as to their request for leave to serve a subpoena seeking testimony from Ms. Kline in her capacity as President of Shell Chemical. As set forth below, precedent supports reading the "found" requirement to the fullest extent permitted by due process, which allows this Court to issue a subpoena to Ms. Kline in her capacity as President of a Delaware entity, with respect to her conduct on behalf of that entity. Even if the Court does not grant the Application as to the proposed subpoena seeking Ms. Kline's testimony, the manner in which the Application was presented to the Court does not warrant denying the Application in toto. Should the Court consider Vestolit and Celanese's submission deficient as to the proposed Kline subpoena, Vestolit and Celanese respectfully request that the Court grant Vestolit and Celanese leave to serve Shell Chemical the document subpoena (D.I. 6-1) and

Rule 30(b)(6) subpoena (D.I. 6-2), attached in proposed form as Exhibits 1-2 to the Gidley Declaration.  *See* Mem. Order 3.

## I.    SECTION 1782 PERMITS THIS COURT TO ISSUE THE REQUESTED SUBPOENA SEEKING MS. KLINE'S DEPOSITION

In its Memorandum Order, this Court correctly recognized that the deposition subpoena to Ms. Kline "is *not* directed to Shell Corporation.  Rather, it is directed to, and seeks the deposition of, Marla Kline." *Id.* at 3-4.  Counsel for Vestolit and Celanese acknowledge that their intention to seek a deposition of Ms. Kline in her capacity as Shell Chemical's President could have and should have been clearer in their papers.  However, Vestolit and Celanese did not intend to mislead the Court.

Vestolit and Celanese initially assumed that a subpoena seeking Ms. Kline's testimony was properly presented to this Court because Ms. Kline is the President of a Delaware entity, which "resides" in this District.  As to the subject matter of the request, Ms. Kline is likely the person with first-hand knowledge about the Mandate Agreement with SCE, *see* MOL 19, which Ms. Kline signed "on behalf" of Shell Chemical.  *See* D.I. 7-7 at 3; MOL 4.  She would thus be an appropriate witness for Shell Chemical under Rule 30(b)(6), but Vestolit and Celanese also included a subpoena for Ms. Kline specifically in an effort to ensure that they could elicit her unique testimony from a knowledgeable representative of Shell Chemical.

Vestolit and Celanese assumed that Shell Chemical could be reached through its registered agent in Delaware and make its President, Ms. Kline, available to

11

testify about matters relating to her service in that office. Vestolit and Celanese did not seek to unduly burden or harass Ms. Kline and noted in the MOL that they would be willing to hold a good faith meet and confer, which could have addressed a mutually convenient time and location to depose Ms. Kline. *See* MOL 19-20. Nonetheless, they now recognize the oversight—and the additional burden it imposed on the Court–of failing to evaluate in their initial papers, separate from the question of where Shell Chemical may be found, whether Ms. Kline also may be "found" in this District.[2]

Now, having examined the issue with the benefit of the Court's Order, Vestolit and Celanese respectfully maintain that the discovery requested from Ms. Kline satisfies the § 1782 statutory elements and that the *Intel* factors weigh in favor of granting it. To address the issue that they omitted previously, Vestolit and Celanese focus on whether Ms. Kline is "found" within this District for purposes of serving a subpoena pursuant to § 1782.

Section 1782(a) states that "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a

---

[2]     Exemplars from different cases do not justify the oversights identified by the Court, specifically the failure to mention Ms. Kline in the Application. But counsel notes that § 1782 cover applications granted by this Court and other courts are oftentimes summary in nature. *See In re Application of Financialright Claims GmbH*, No. 23-cv-1481-CFC (D. Del. Dec. 29, 2023), D.I. 2; *In re Request From Vienna*, No. 23-mc-258-CFC (D. Del. May 9, 2023), D.I. 1; *see also In re Application of Zhao*, No. 22-mc-195 (S.D.N.Y. July 27, 2022), D.I. 9.

document or other thing for use in a proceeding in a foreign or international tribunal." "[F]ound" is distinct from "resides" in the statutory text. *See* 28 U.S.C. § 1782(a) ("resides *or* is found" (emphasis added)). The statute does not define "found," but courts interpret this language "broadly." *In re del Valle Ruiz*, 939 F.3d 520, 527-28 (2d Cir. 2019) (citing past interpretations of "similar 'found' language in other statutes" to reject limited "focus on an individual's physical presence"); *see also In re Biomet Orthopaedics Switz. GmbH*, 742 F. App'x 690, 695 (3d Cir. 2018) (explaining that § 1782 "was designed to facilitate the conduct of litigation in foreign tribunals" and characterizing "the statutory requirements" as "modest prima facie elements" (internal quotation marks and citation omitted)). Although neither the Third Circuit nor the District of Delaware have addressed the issue in this context to counsel's knowledge, the Second Circuit has held that § 1782(a)'s "found" element extends to the limits of personal jurisdiction consistent with constitutional due process. *Ruiz*, 939 F.3d at 527. *But see In re Eli Lilly & Co.*, 37 F.4th 160, 167 (4th Cir. 2022) (holding that statute's reference to "found" means physical presence and characterizing *Ruiz* as not persuasive on this point).

A recent decision of the District of New Jersey cited *Ruiz* with approval for the proposition that "'§ 1782's resides or is found language extends to the limits of personal jurisdiction consistent with due process,'" while noting that a resident of New Jersey "very well may also be 'found' in the Southern District of New York as

a result of her place of employment." *In re Frasers Grp.*, No. 23-cv-22795, 2024 WL 139488, at *2 n.1 (D.N.J. Jan. 12, 2024) (quoting *Ruiz*, 939 F.3d at 528) (denying § 1782 discovery on other grounds after noting that "the statute, by its terms, provides for at least two possible fora for this application"). Courts outside the Third Circuit have held that non-resident individuals' relationships with an in-District company may support the "found" requirement of § 1782. *See In re Polygon Glob. Partners LLP*, No. 21-mc-364, 2021 WL 2117397, at *4–6 (S.D.N.Y. May 25, 2021) (applying *Ruiz* to hold that "the exercise of personal jurisdiction over [two non-resident individuals] would not offend due process" because "any work they would have performed relating to the [subject matter of the proposed § 1782 discovery] . . . would have been inextricably tied to their employment as part of KKR's New York-based team, even if it was not performed while they were physically present in this District"); *In re Ferrer*, No. 18-cv-20226, 2018 WL 3240010, at *6 (S.D. Fla. July 3, 2018), *on reconsideration in part*, No. 18-cv-20226, 2018 WL 4575043 (S.D. Fla. Sept. 5, 2018) (considering discovery targets' positions as officers or managing members of Florida corporations or LLCs (among other facts) when holding that "found" requirement supported authorizing subpoenas to them individually).

Vestolit and Celanese submit that, based on the jurisdictional analysis endorsed in *Ruiz*, § 1782 permits the subpoena to issue to Ms. Kline as President of

a Delaware entity when the discovery sought is limited to information regarding Ms. Kline's role as President of Shell Chemical and her specific actions to bind that entity to the terms of the Mandate Agreement. *See Cerciello v. Canale*, 563 F. App'x 924, 928 (3d Cir. 2014) (explaining the "fact specific" test for personal jurisdiction over a corporate officer and citing the Supreme Court's holding that a magazine "corporation's president was subject to personal jurisdiction in a state other than his domicile because a person with that level of authority 'oversee[s] just about every function of the [publication],' including the sending of magazines to other states" (quoting *Calder v. Jones*, 465 U.S. 783 (1984))). Section 1782 further incorporates the Federal Rules of Civil Procedure, which both permit this Court to issue subpoenas out of district, Fed. R. Civ. P. 45(a)(2) ("A subpoena must issue from the court where the action is pending."), and protect nonparties from undue burden by, inter alia, requiring compliance and enforcement of the subpoena in a place convenient for the nonparty, Fed. R. Civ. P. 45(c), (d). *See In re Edelman*, 295 F.3d 171, 178 (2nd Cir. 2002) (reasoning that § 1782(a)'s incorporation of the procedural protections of the Federal Rules of Civil Procedure "supports a flexible reading of the phrase 'resides or is found'").

Vestolit and Celanese acknowledge that their Application and Proposed Order should have stated more clearly that they were seeking testimony both from a Rule 30(b)(6) witness *and* Ms. Kline, in her capacity as the entity's President. Counsel

also should have identified and addressed the legal issue of whether Ms. Kline is "found" in this District for purposes of §1782(a). However, these omissions were not intended to mislead this Court, and we respectfully submit that a deposition of Ms. Kline is proper under § 1782.

## II.    EVEN IF THE COURT DENIES THE APPLICATION TO SERVE THE KLINE SUBPOENA, IT SHOULD GRANT THE REMAINDER OF THE APPLICATION

Vestolit and Celanese further respectfully submit that the Court should not deny the Application in toto due to the manner in which Ms. Kline's deposition was requested, especially since the Application was made in good faith.

*First*, if the Court finds that the statutory elements are satisfied as to Shell Chemical and not Ms. Kline, it should grant the requested discovery as to Shell Chemical only. *See, e.g.*, *In re Chevron Corp.*, 633 F.3d 153, 160 n.11 (3d Cir. 2011) (noting that district court had granted § 1782 application as to New Jersey-based corporation, but had denied it as to corporation's Ecuador-based employee "without prejudice to [applicant's] right to later establish that he is found in the district");[3] *In re Aso*, No. 19-mc-190, 2019 WL 3244151, at *5 (S.D.N.Y. July 19,

---

[3]    In footnote 11, *Chevron* states that "section 1782 only applies to a person who 'resides' in the district of the District Court." Earlier in the decision, the Court quoted the full statutory language that "the district court of the district in which a person resides *or is found* . . . ." 633 F.3d at 155 (emphasis added). Counsel does not understand *Chevron's* statement in footnote 11, in discussing that the target "lives in Ecuador," to limit § 1782 only to where a person "resides." *Id.* at 160 n.11.

2019) (granting application in part as to banks headquartered in the Southern District but denying it as to other banks that were merely registered to do business in New York); *In re del Valle Ruiz*, 342 F. Supp. 3d 448, 460 (S.D.N.Y. 2018) (granting application as to foreign bank's New York-based subsidiary, but denying application as to foreign bank that maintained branches in the Southern District but was not otherwise "found" there), *aff'd*, 939 F.3d 520 (2d Cir. 2019).

*Second*, if the Court finds the Application is "unduly intrusive or burdensome," it may trim rather than deny the discovery requests. *See Intel*, 542 U.S. at 245 ("[U]nduly intrusive or burdensome requests may be rejected or trimmed."). The Third Circuit has held that, "although *Intel* does not require the District Courts to 'trim[]' onerous requests," it is error to "turn down . . . flat" a discovery request that does not satisfy the fourth *Intel* factor without requiring the parties to negotiate over "cutting down the request." *In re Biomet Orthopaedics Switzerland GmbH*, 742 F. App'x 690, 699-700 (3d Cir. 2018) (quoting *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 597 (7th Cir. 2011)) (reversing order quashing subpoena and remanding for further § 1782 discovery proceedings); *see also Euromepa S.A.,* 51 F.3d at 1101 ("[I]t is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright.").

This Court and other courts in this District have accordingly granted § 1782 applications in part after finding that some portions failed to satisfy the statutory requirements or *Intel* factors. *See, e.g.*, *In re Request from the Bahamas*, No. 1:22-mc-00552 (D. Del. May 23, 2023), D.I. 28 (granting § 1782 application in part as to certain document requests); *In re Liverpool Ltd. P'ship*, No. 21-mc-86-CFC, 2021 WL 3793901, at *4 (D. Del. Aug. 26, 2021) (granting application in part as to specified topics only).

*Third*, Celanese and Vestolit strongly believe there is no basis to find a violation of Model Rule 3.3(d). Vestolit and Celanese respectfully submit that they failed to identify and address a legal issue, while otherwise submitting meritorious discovery requests in good faith and providing a submission with facts they believed necessary for the Court to make an informed decision. Although the Application should have been clearer about the request for Ms. Kline's deposition, this situation stands in contrast to cases where counsel submitting § 1782 applications have wholly failed to inform the court of known material facts, such as the status of the foreign proceeding or relevant rulings against them. *See, e.g.*, *In re Ex Parte Application of Eni S.p.A. for an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery for Use in Foreign Proc.*, No. 20-mc-334-MN, 2021 WL 1063390, at *2 n.4 (D. Del. Mar. 19, 2021) (faulting applicants for entirely omitting key facts, including that the foreign criminal proceeding for which applicants sought discovery

was already "in closing arguments" and "the court has already denied a motion to admit additional evidence"); *LAE Techs. Hong Kong Ltd. v. Demuren*, No. 23-cv-2314, 2024 WL 863464, at *5, 7-8 (D.N.J. Feb. 29, 2024) (allegations that applicant LAE lacked "candor with respect to the findings of the Hong Kong High Court's March 30, 2022, decision, denying LAE's motion for summary judgment . . . as well as its failures to seek any party discovery in the Hong Kong matters" before filing § 1782 application). However, even in cases of significant omissions or misrepresentations, courts have trimmed the application rather than denying it in toto. *See, e.g.*, *Eni S.p.A.*, 2021 WL 1063390, at *2 n.4 (rejecting argument that applicants' "omissions merit denying its discovery request entirely"); *LAE Techs.*, 2024 WL 863464, at *2, 5 (denying motion to quash in part after considering § 1782 applicant's "lack of candor with the Court").

*    *    *

The Application and Proposed Order here each should have stated expressly, up front and on their face, that the discovery sought was from Shell Chemical's President as well as from Shell Chemical rather than merely referencing separate exhibits. However, undersigned counsel did not intentionally misrepresent the nature of the discovery sought, nor did counsel intentionally omit facts about Ms. Kline that they believed to be relevant in the papers submitted to the Court. Vestolit and Celanese noted in the Memorandum of Law that they were seeking a deposition

of Ms. Kline, while explaining her role and her relevance to the requested discovery. *See* MOL 12, 19.    Moreover, the attorney declarations submitted herewith demonstrate that the Application was not made in bad faith.    To the contrary, undersigned counsel, in various capacities, devoted significant time to the § 1782 submission, seeking to ensure that it met the necessary requirements under the statute, set forth the material facts, and was targeted at the appropriate entities. Vestolit, Celanese, and undersigned counsel apologize for and regret the burden their oversights have put on the Court.

## **CONCLUSION**

Vestolit and Celanese respectfully request that the Court grant their *ex parte* Application for an Order under 28 U.S.C. § 1782 to obtain discovery from Shell Chemical and Shell Chemical's President Marla Kline and grant them leave to serve (1) the document subpoena (Gidley Decl. Ex. 1); (2) the Rule 30(b)(6) deposition subpoena (Gidley Decl., Ex. 2); and the  subpoena for deposition of Ms. Kline (Gidley Decl. Ex. 3).  In the event that the Court denies the request for Ms. Kline's deposition, Vestolit and Celanese respectfully request that the Court grant the remainder of the Application or otherwise tailor the Application or issue further directives to the parties.

Counsel is available to discuss this matter further or to provide additional information as the Court may request.

Dated: January 28, 2025                    Respectfully submitted,

**WHITE & CASE**

J. Mark Gidley (*Pro hac vice*)
J. Frank Hogue (*Pro hac vice*)
Jaclyn Phillips (*Pro hac vice*)
Alec Albright (*Pro hac vice*)
701 13th Street, NW
Washington, DC 20005
(202) 626-3600
mgidley@whitecase.com
fhogue@whitecase.com
jaclyn.phillips@whitecase.com
alec.albright@whitecase.com

*Of Counsel for Applicant
Vestolit GmbH*

**HEYMAN ENERIO GATTUSO & HIRZEL LLP**

*/s/ Samuel T. Hirzel, II*
Samuel T. Hirzel, II (# 4415)
Elizabeth A. DeFelice (#5474)
300 Delaware Avenue, Suite 200
Wilmington, DE 19801
(302) 472-7300
shirzel@hegh.law
edefelice@hegh.law

*Counsel for Applicants Vestolit GmbH and
Celanese Europe B.V.*

**WACHTELL, LIPTON, ROSEN & KATZ**

Graham W. Meli (*Pro hac vice*)
51 West 52 Street
New York, NY 10019
(212) 403-1000
gwmeli@wlrk.com

*Of Counsel for Applicant Celanese
Europe B.V.*

21