IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re Application of<br><br>VESTOLIT GMBH<br><br>and<br><br>CELANESE EUROPE B.V.,<br><br>*Applicants*,<br><br>To Obtain Discovery for Use in a<br>Foreign Proceeding Pursuant to<br>28 U.S.C. § 1782 | Misc. Action No. 24-cv-01401-CFC |

### DECLARATION OF J. MARK GIDLEY IN RESPONSE
### TO THE COURT'S JANUARY 14, 2025 ORDER TO SHOW CAUSE

I, J. MARK GIDLEY, hereby declare:

1. I am an attorney licensed to practice law in the District of Columbia and the State of New York. I am a Partner at White & Case LLP and co-chair of White & Case's Global Antitrust Practice. I am co-counsel to Petitioner Vestolit GmbH in the above-captioned matter.

2. The Court granted the motion for me to appear *pro hac vice* in this matter on January 14, 2025.

3. I make this declaration in response to the Court's January 14, 2025 Memorandum Order directing each of the seven lawyers whose names appear on the

*Ex Parte* Application for an Order Granting Leave to Obtain Discovery Under 28 U.S.C. § 1782 for Use in a Foreign Proceeding (D.I. 1) (the "Application") and on the Memorandum of Law in Support of *Ex Parte* Application for an Order Under 28 U.S.C. § 1782 to Obtain Discovery for Use in a Foreign Proceeding (the "Memorandum of Law") (D.I. 5) to show cause why they should not be deemed to have violated Rule 3.3(d) of the Model Rules of Professional Conduct of the American Bar Association. *See* D.I. 11 at 6.

4.  The Memorandum Opinion additionally directs that each show-cause submission "explain how that lawyer contributed to the Application and supporting memorandum and how much time that lawyer spent making that contribution." D.I. 11 at 6.

5.  I am the senior attorney at White & Case assigned to this matter, and am responsible for the quality of our firm's work in this case. I have spent a total of approximately 55 hours working on this § 1782 petition, prior to the Court's January 14, 2025 Order.

6.  I am deeply sorry to have burdened the Court by not making the request for a subpoena to Ms. Kline clear on the face of the Application and Proposed Order, and I regret not prominently describing her role and the issue of where she could be "found" under § 1782 in the Memorandum of Law. I recognize that a passing cross-reference in the Application to her subpoena attached to my declaration as Exhibit 3

(D.I. 1) was not sufficient, particularly given the ex parte nature of the proceeding.

7. In preparing the § 1782 filings, I had not specifically focused on the legal issue of whether Ms. Kline was "found in" the District of Delaware for purposes of the statute. My focus on the propriety of the subpoena application under § 1782 had been entirely on Ms. Kline's position as "President of Shell Chemical LP," D.I. 6-3 at 1, i.e., the Delaware limited partnership, and on her role in signing the Mandate Agreement purporting to permit the European Shell entity asserting claims in The Netherlands to prosecute Shell Chemical LP's US claims against Vestolit. I assumed that Ms. Kline could be "found" in the District of Delaware for purposes of § 1782 based on her role as President of Shell Chemical LP and as signatory to the Shell Chemical Mandate Agreement on behalf of Shell Chemical LP. I deeply regret and apologize that the Court did not get sufficient assistance from counsel in the Application on this issue. It was not my intent to avoid the issue; I simply did not perceive the legal issue of where Ms. Kline was "found" under the statute.

8. I have no reason to believe that any member of my team spotted the issue of whether the analysis of where the President of Shell Chemical LP could be "found" under § 1782 was distinct from the issue of where Shell Chemical LP could be "found." We believed that as the President of Shell Chemical LP, and the actor who signed the Mandate Agreement on behalf of Shell Chemical LP purporting to

permit the Shell entity in The Netherlands (Shell Chemicals Europe B.V. ("SCE")) to prosecute claims belonging to Shell Chemical LP, Ms. Kline was "found" in this District for purposes of § 1782. Below I provide further information concerning my work on the § 1782 Application and Memorandum of Law, followed by an accounting of the time I spent working on the Application and Memorandum of Law.

**Background**

9. Since early September 2022, I have led the White & Case antitrust team coordinating Vestolit GmbH's antitrust damages defense with Dutch counsel in the Dutch court against SCE's claims for damages. I have been involved with the strategic planning of Vestolit's defense against SCE's claims in The Netherlands before the possibility of utilizing 28 U.S.C. § 1782 discovery first arose.

10. The § 1782 filings submitted to this Court on December 20, 2024 stemmed from my discussions with the Dutch Counsel representing Vestolit in approximately mid-February 2024. Vestolit's Dutch Counsel in the Dutch Proceedings is the Dutch law firm Houthoff Coöperatief u.a, led by Houthoff litigation partner Henricus Martinus (Rick) Cornelissen. Working with my White & Case colleagues Peter Carney and Jaclyn Phillips, we investigated the viability of § 1782 for our cross-border representation of Vestolit.

11. One step that the team took was to obtain examples of § 1782 applications. Many of the § 1782 Applications examples our team found were quite

brief (sometimes 3 sentences or less), often accompanied by a longer memorandum of law. That is an explanation for the Application's brevity here, but not an excuse. We strive to make our work in complex cases straightforward. We unfortunately here made the Court's task in reviewing our papers more complex and more burdensome on the Court than it should have been.

12. Between February 2024 and mid-July 2024, I regularly worked with the U.S.-based White & Case antitrust litigation team, reviewing and directing their legal research concerning § 1782's standards and procedures (*e.g.*, the *Intel* factors) as they applied to a § 1782 request directed at Shell Chemical LP.

13. We also consulted with other colleagues at White & Case, including members of our international arbitration team that had prior experience with § 1782 discovery.

14. In September and October 2024, as we evaluated potential § 1782 requests for documents from U.S-based Shell entities, our factual research led us to concurrently work with Dutch Counsel to prepare and send a letter to SCE asking SCE to explain the basis for its authority to assert, and ownership of, its €1.13 billion claims for damages that apparently belonged, in part, to U.S. Shell entities. Declaration of H.M. Cornelissen in Support of Ex Parte Application for Discovery Pursuant to 28 U.S.C. § 1782 ("Cornelissen Declaration"), D.I. 7 at ¶¶ 30-32; *see* Letter from Rick Cornelissen, outside counsel for Vestolit, to Chr. Frank Kroes,

outside counsel for SCE, "Ethylene | Shell entities mandates," D.I. 7-5.

15. It was SCE's November 11, 2024 responses to our letters that informed us of the October 23, 2024 Shell Chemical Mandate Agreement, which purported to permit the Shell Chemical Europe entity, which had sued Vestolit in 2022, to pursue the US claims. Shell Chemical Mandate Agreement, D.I. 7-7; *see* Letter from Chr. Frank Kroes, outside counsel for SCE, to Rick Cornelissen, outside counsel for Vestolit, "Re: Shell Mandates," D.I. 7-9.

16. Shell Chemical's President Marla Kline signed the Mandate Agreement on October 23, 2024 as "President of Shell Chemical LP, a Delaware limited partnership, on behalf of said partnership." Shell Chemical Mandate Agreement, D.I. 7-7 at 4. Accordingly, the subpoena was directed to "Marla Kline, President of Shell Chemical LP," and provided that the deposition would be held in Delaware. D.I. 6-3 at 1. We used this language in the subpoena, and directed the deposition to be taken in Delaware, because we were focused on her role as President of the Delaware entity Shell Chemical LP.

17. In the fall of 2024, the White & Case team began preparing the § 1782 court papers that were ultimately filed in this Court on December 20, 2024. The team benefitted from previous legal and factual research. Based on my review of my time records, my first review of a draft of the Memorandum of Law occurred during a meeting with my antitrust civil litigation partner Peter Carney on November

6

12, 2024. I had reviewed much of the law cited in the Memorandum of Law earlier in the year during our earlier research work.

18. For the Memorandum of Law, I analyzed the two November 11, 2024, letters from SCE. I made suggested revisions to the discovery request under § 1782. I also reviewed § 1782 motions from other cases with Frank Hogue in the latter half of November 2024 to inform further revisions. I readily see now that the Application and Order we filed here needlessly burdened the Court, which was never my intent.

19. I also reached out and received comments from co-counsel representing Dutch Proceedings co-defendant Celanese Europe B.V. in this Application.

20. Between mid-November 2024 and December 20, 2024, I reviewed, commented on, and revised the Memorandum of Law. I also conferred with Vestolit's Dutch Counsel on our § 1782 filings. In addition, I edited and finalized my Declaration (the Declaration of J. Mark Gidley in Support of Petitioners' Application for an Order of Judicial Assistance Pursuant to 28 U.S.C. § 1782, D.I. 6 (the "Gidley Declaration")), revised the draft Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action to Shell Chemical LP (Exhibit 1 to the Gidley Declaration, D.I. 6-1), edited the draft Subpoena to Testify at a Deposition in a Civil Action to Shell Chemical LP (Exhibit 2 to the Gidley Declaration, D.I. 6-2), and reviewed the draft Subpoena to Testify at a Deposition in a Civil Action to Marla Kline, President of Shell Chemical (Exhibit

3 to the Gidley Declaration, D.I. 6-3).

**ABA Model Rule 3.3(d)**

21. ABA Model Rule 3.3(d) requires attorneys to "inform" the court of "all material facts known to the lawyer that will enable [the court] to make an informed decision, whether or not the facts are adverse." Model Rules of Prof'l Conduct R. 3.3(d). *See also id.*, Comment 14 to ABA Model Rule 3.3(d) (A lawyer must disclose "material facts known to the lawyer and that the lawyer reasonably believes are necessary to an informed decision"); ABA Model Rule 1.0(f) ("'Knowingly,' 'known,' or 'knows' denotes actual knowledge of the fact in question. . . .").

22. I respectfully submit that I did not fail to inform the Court of all material facts known to me that I reasonably believed would enable the Court to make an informed decision, whether or not the facts are adverse. In my Declaration, I informed the court of the subpoena directed to Ms. Kline and attached it as an exhibit. D.I. 6 ¶ 4; D.I. 6-3. We attached to the Cornelissen Declaration the Mandate Agreement reflecting that Ms. Kline signed that agreement in Texas. D.I. 7-7 at 4. And in our Memorandum of Law, we identified the subpoena to Ms. Kline and the location of Shell Chemical's headquarters in Texas. D.I. 5 at 5, 16, 19. I fully understand that these references were too scattered and too indirect to fully assist the Court in its evaluation of our Application.

23. I also acknowledge that the Application and Proposed Order did not

address the subpoena to Ms. Kline by name, and the Memorandum of Law did not offer legal argument addressing whether Marla Kline, President of Shell Chemical LP, can be "found" in the District of Delaware for purposes of 28 U.S.C. § 1782. Those omissions were an oversight, and ones I deeply regret given the added burden they imposed on the Court in evaluating the Application. They were not, however, intentional in any way to obscure any issue.

24. Rather, my focus was solely on Ms. Kline's role as President of the Delaware entity Shell Chemical LP, and her role as the signatory of the Mandate Agreement that purports to permit SCE, the Dutch entity suing Vestolit, to prosecute the claims of the Delaware entity. As stated at the outset of my Declaration, it did not occur to me to focus on whether Ms. Kline's deposition subpoena presented unique issues (apart from those concerning the Delaware entity Shell Chemical LP), such as where Ms. Kline may be "found" for purposes of § 1782.

25. It was not until the Court's January 14, 2024 Memorandum Order that I considered the § 1782 "found" requirement as relating to Ms. Kline's apparent presence in Texas, i.e., where she signed the Mandate Agreement (Texas) D.I. 7-7 at 4, and the location of Shell Chemical's corporate headquarters, D.I. 5 at 5, as opposed to her corporate role for a Delaware entity.

26. I also regret that Ms. Kline was not clearly identified on the face of the Application and Proposed Order. I apologize to the Court for the additional burden

in understanding the scope of the requests of Vestolit and Celanese for Ms. Kline's deposition from the Application, Memorandum of Law, Proposed Order, and other attachments to the § 1782 filing. I respectfully submit that I did not withhold facts. However, I acknowledge and regret not making these facts more prominent for the Court's review.

## Time Spent on the Application and Memorandum of Law

27.   Between February 2024 and September 2024, I spent approximately 16 hours overseeing and reviewing the legal research underpinning the Memorandum of Law. The team's drafting of the Memorandum of Law began in earnest at the end of October 2024. From mid-November 2024 until our § 1782 filing was submitted on December 20, 2024, I spent just shy of 19 hours working on the Memorandum of Law and the accompanying papers, with the vast majority of that time devoted to the Memorandum of Law. To the best of my recollection, I spent less than an hour on the Application itself.

28. From July 2024 until we submitted our § 1782 filings on December 20, 2024, I further devoted approximately 20 hours to other aspects of § 1782. That work primarily entailed revising the document subpoena categories (particularly in light of the Mandate Agreement), my declaration, and the correspondence concerning the Mandate Agreement.

29. I declare under penalty of perjury that the foregoing is true and correct. Executed on January 28, 2025, at Washington, D.C.

J. Mark Gidley