# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re Application of<br><br>VESTOLIT GMBH<br><br>and<br><br>CELANESE EUROPE B.V.,<br><br>*Applicants*,<br><br>To Obtain Discovery for Use in a<br>Foreign Proceeding Pursuant to<br>28 U.S.C. § 1782 | Misc. Action No. 24-cv-01401-CFC |

## DECLARATION OF J. FRANK HOGUE IN RESPONSE TO THE COURT'S JANUARY 14, 2025 ORDER TO SHOW CAUSE

I, J. FRANK HOGUE, hereby declare:

1. I am an attorney licensed to practice law in the District of Columbia and the State of Maryland. I am a Partner at White & Case LLP and co-counsel to Petitioner Vestolit GmbH in the above-captioned matter. On December 23, 2024, co-counsel at Heyman Enerio Gattuso & Hirzel LLP ("HEG&H") filed with the Court a Motion and Order for Admission *Pro Hac Vice* for myself and my White & Case colleagues (D.I. 8). The Court granted the Motion on January 14, 2025.

2. I respectfully make this declaration in response to the Court's January 14, 2025 Memorandum Opinion directing each of the seven lawyers whose names appear on the *Ex Parte* Application for an Order Granting Leave to Obtain Discovery Under 28 U.S.C. § 1782 for Use in a Foreign Proceeding (D.I. 1) (the "Application") and on the Memorandum of Law in Support of *Ex Parte* Application for an Order Under 28 U.S.C. § 1782 to Obtain Discovery for Use in a Foreign Proceeding (the "Memorandum of Law") (D.I. 5) to show cause why they should not be deemed to have violated Rule 3.3(d) of the Model Rules of Professional Conduct of the American Bar Association. *See* D.I. 11 at 6.

3. The Memorandum Opinion additionally directs that each show-cause submission "explain how that lawyer contributed to the Application and supporting memorandum and how much time that lawyer spent making that contribution." D.I. 11 at 6.

4. As an initial matter, it is always my intention to provide the Court with the facts and legal arguments to support any request that I make to the Court. I apologize to the Court for falling short of providing sufficient argument to establish that Ms. Kline may be "found" in the District of Delaware for purposes of 28 U.S.C. § 1782 and that the Application and Proposed Order were not clearer that one of the proposed subpoenas was directed to Ms. Kline. I assumed that as President of a Delaware limited partnership, Ms. Kline could be "found" in the District of

2

Delaware given that she signed the Mandate Agreement "on behalf of" Shell Chemical LP, "a Delaware limited partnership." Shell Chemical Mandate Agreement, D.I. 7-7 at 4. I regret that this failing has imposed additional burden on the Court. I respectfully submit that my assumption of where Ms. Kline may be "found" for purposes of § 1782 does not constitute a lack of candor as would be required to find a violation of Model Rule 3.3(d). Nor does failing to specifically reference Ms. Kline by name in the Application and Proposed Order. I recognize that passing references in the Memorandum of Law, a form of the subpoena to Ms. Kline, and cross-references in the Application and Proposed Order were insufficient to alert the Court that part of Vestolit and Celanese's request was to issue a subpoena to Ms. Kline in her capacity as President of Shell Chemical.

### **Background Work on My Contributions to the § 1782 Filing**

5. I began work on Vestolit GmbH's defense against Shell Chemicals Europe B.V.'s ("SCE") lawsuit in The Netherlands on November 7, 2024. I joined the team to take over the responsibilities of Peter Carney, a White & Case Partner who was scheduled to retire at the end of 2024, and who did subsequently retire at the end of 2024.

6. Prior to my work on the § 1782 filing, Mr. Carney and the team (primarily Mark Gidley, Jaclyn Phillips, and Alec Albright, assisted by others) had worked on analyzing legal arguments and facts related to § 1782 generally.

3

7. Beginning on November 13, 2024, I familiarized myself with the team's work on the § 1782 efforts to date. I reviewed SCE's filings in the Dutch Proceedings, SCE's calculations of claimed damages (including those based on sales of ethylene derivative products produced in the United States by Shell Chemical LP), research the team had conducted regarding § 1782, and multiple examples of other § 1782 filings in the District of Delaware.

**My Contributions to the Memorandum of Law**

8. My first review of the Memorandum of Law occurred on November 18, 2024. The draft that I reviewed was already well-developed. My understanding is that other members of the team had devoted significant attention to the draft in the two weeks prior to my involvement.

9. As to the Memorandum of Law, I reviewed, edited, and commented on drafts of the document. I conferred with Mark Gidley, Peter Carney, Alec Albright, and other members of the Vestolit team on successive iterations of the Memorandum of Law. I also reviewed § 1782 filings from other cases to inform further revisions. Throughout the process of preparing our § 1782 filings, Mark Gidley and Peter Carney remained heavily involved and we worked closely together on the filings.

10. As part of my work on the § 1782 filing, I reviewed SCE's November 11, 2024 response letter regarding the Shell Mandates, including the Shell Chemical Mandate Agreement, which Shell Chemical's President Marla Kline signed on

4

October 23, 2024. D.I. 7-9, D.I. 7-7 at 4. I also discussed our § 1782 efforts with Vestolit's Dutch counsel, Henricus Martinus (Rick) Cornelissen and Davide Ballestrero of the law firm Houthoff Coöperatief u.a. ("Houthoff"), as well as Graham W. Meli of Wachtell, Lipton, Rozen & Katz ("Wachtell"), counsel for Celanese Europe B.V. ("Celanese").

11. After reviewing SCE's November 11, 2024 response letter, my colleagues and I considered whether to request a subpoena of Ms. Kline as well as Shell Chemical. After reviewing the Shell Chemical Mandate Agreement, we recognized that Ms. Kline signed the Mandate Agreement in her role as "President of Shell Chemical, a Delaware limited partnership, on behalf of said partnership." Shell Chemical Mandate Agreement, D.I. 7-7 at 4. This formed the basis for my assumption that Ms. Kline's role as President of Shell Chemical, a Delaware limited partnership, and signatory of the Shell Chemical Mandate Agreement meant that Ms. Kline could be "found" in the District of Delaware for purposes of § 1782.

12. It was not until I had the benefit of this Court's Memorandum Order that I undertook a more in-depth assessment of where Ms. Kline was "found" for purposes of § 1782. Prior to the Memorandum Order, I only considered Ms. Kline's possible physical location in Texas (based on the notarization of the Mandate Agreement in Harris County, Texas (D.I. 7-7 at 4)) in terms of confirming that Fed. R. Civ. P. 45 would allow for service of the subpoena on Ms. Kline and in terms of

5

where her deposition would take place following a meet-and-confer discussion with Shell's counsel. *See* Fed. R. Civ. P. 45(b)(2) ("A subpoena may be served at any place within the United States."); Fed. R. Civ. P. 45 advisory committee's note to 2013 amendment (stating that the 2013 amendments "permit nationwide service of subpoena").

13. Concurrent with my work on the Memorandum of Law, I also reviewed, edited, and commented on drafts of the Declaration of J. Mark Gidley in Support of Petitioners' Application for an Order of Judicial Assistance Pursuant to 28 U.S.C. § 1782, D.I. 6 (the "Gidley Declaration"), the Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action to Shell Chemical LP (Exhibit 1 to the Gidley Declaration, D.I. 6-1), and the Subpoena to Testify at a Deposition in a Civil Action to Shell Chemical LP (Exhibit 2 to the Gidley Declaration, D.I. 6-2). I spent a considerable amount of time drafting and revising the Rule 30(b)(6) deposition topics.

14. I additionally provided drafts of the Memorandum of Law to co-counsel at HEG&H, counsel for Celanese (Graham Meli of Wachtell), and Houthoff for their review, editing, and comment. I provided the final draft of the Memorandum of Law to co-counsel and counsel for Celanese for their final review and sign-off.

### My Contributions to the Application

15. As for the Application, the initial draft was created on December 10, 2024. Neither the initial draft nor subsequent drafts specifically identified Ms. Kline as one of the recipients of the proposed subpoenas. I now appreciate, and regret, that not identifying Ms. Kline by name in the Application required the Court to navigate cross-references to the Gidley Declaration to determine that Vestolit and Celanese were requesting permission to serve a deposition subpoena on Ms. Kline (in her official capacity).

16. My review of drafts of the Application focused on ensuring that the Application accurately reflected Celanese joining the Application with Vestolit, that the cross-references to the supporting documents were correct, and that the Application referenced the number of subpoenas Vestolit and Celanese requested to serve. I additionally provided the final draft of the Application to co-counsel and counsel for Celanese for their review.

### Model Rule 3.3(d)

17. ABA Model Rule 3.3(d) requires attorneys to "inform" this Court of "all material facts known to the lawyer that will enable [the Court] to make an informed decision, whether or not the facts are adverse." Model Rules of Prof'l Conduct R. 3.3(d); *see also id.*, cmt. 14 (rule applies to "material facts known to the lawyer and that the lawyer reasonably believes are necessary to an informed

decision"); ABA Model Rule 1.0 ("'known' . . . denotes actual knowledge of the fact in question . . . .").

18. I respectfully submit that I did not fail to inform the Court of material facts known to me that would enable the Court to make an informed decision, whether or not the facts are adverse. Additionally, I am unaware of any effort to conceal from the Court material facts regarding where Ms. Kline may be "found." I regret that the Application (D.I. 1) was not more clear that it included a request for authorization to serve a subpoena on Ms. Kline, but I did not withhold material facts known to me from the Court. I further recognize that I did not put before the Court legal arguments to demonstrate that Ms. Kline, President of Shell Chemical, can be "found" in the District of Delaware for purposes of 28 U.S.C. § 1782. As stated at the outset of my declaration, I assumed that as President of a Delaware limited partnership, Ms. Kline could be "found" in the District of Delaware for purposes of § 1782, particularly given that she signed the Mandate Agreement "on behalf of" Shell Chemical. I respectfully submit that the oversight of the legal issue of where Ms. Kline may be "found" in the Memorandum of Law did not constitute a lack of candor as would be required to find a violation of Model Rule 3.3(d).

### My Hours Devoted to the Application, Memorandum of Law, and Other § 1782 Work

19. In total, I spent approximately 31 hours working on the Application and Memorandum of Law. I estimate that one hour was devoted to the Application and

8

30 hours were devoted to the Memorandum of Law. Additionally, approximately 51 hours was spent on §1782 work that I cannot directly attribute to either document. Those approximately 51 hours were for, *inter alia*, work related to the Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action to Shell Chemical LP (Exhibit 1 to the Gidley Declaration), the Subpoena to Testify at a Deposition in a Civil Action to Shell Chemical LP (Exhibit 2 to the Gidley Declaration), the Subpoena to Testify at a Deposition in a Civil Action to Marla Kline, President of Shell Chemical (Exhibit 3 to the Gidley Declaration), the Gidley Declaration, and other documents in the §1782 filing.

20. I am available to answer any questions the Court may have regarding this matter and to provide additional information if that would assist the Court. Vestolit and I sincerely regret the burden that this matter has placed on the Court.

I declare under penalty of perjury that the foregoing is true and correct. Executed on January 28, 2025, at Washington, D.C.

*/s/ J. Frank Hogue*

J. Frank Hogue