# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re Application of<br><br>VESTOLIT GMBH<br><br>and<br><br>CELANESE EUROPE B.V.,<br><br>*Applicants*,<br><br>To Obtain Discovery for Use in a Foreign Proceeding Pursuant to 28 U.S.C. § 1782 | Misc. Action No. 24-cv-01401-CFC |

### DECLARATION OF ALEC ALBRIGHT IN RESPONSE TO THE COURT'S JANUARY 14, 2025 ORDER TO SHOW CAUSE

I, ALEC ALBRIGHT, hereby declare:

1. I am a member in good standing of the District of Columbia Bar and the State Bar of California. I am a mid-level associate at White & Case LLP ("White & Case"), co-counsel to Petitioner Vestolit GmbH ("Vestolit") in the above-captioned matter. I appear *pro hac vice* on behalf of Vestolit. *See* D.I. 8; Order for Admission *Pro Hac Vice* (Jan. 14, 2025).

2. I respectfully submit this Declaration in response to the Court's Memorandum Order dated January 14, 2025 (D.I. 11). In the Memorandum Order, the Court ordered that "each of the seven lawyers whose name appears on the

Application (D.I. 1) and on the memorandum filed in support of the Application (D.I. 5) shall show cause why that lawyer should not be deemed to have violated Model Rule 3.3(d)." Mem. Order 6. The Court further ordered that each lawyer "shall explain how that lawyer contributed to the Application and supporting memorandum and how much time the lawyer spent making that contribution." *Id.*

3. I take my professional and ethical responsibilities as an attorney seriously and appreciate the opportunity to submit this Declaration to the Court. At the outset, I sincerely apologize for any confusion, inconvenience, or other burdens the Court incurred in reviewing the Application, Memorandum of Law, Proposed Order, and accompanying materials. In my contributions in preparing these materials, I intended to provide the Court with sufficient information and legal argument to support the relief requested under 28 U.S.C. § 1782. In this respect, I had assumed that Marla Kline, the President of Shell Chemical LP ("Shell Chemical"), could be "found" in this District within the meaning of § 1782(a) because she signed the Shell Chemical Mandate Agreement (D.I. 7-7) (the "Mandate Agreement") "on behalf of" "Shell Chemical LP, a Delaware limited partnership." Mandate Agreement 4 (D.I. 7-7).

4. In hindsight and with the benefit of this Court's Memorandum Order, I now see that the Application and Memorandum of Law did not explain this legal position as to Ms. Kline. In addition, I acknowledge that the Application and

Proposed Order should have specified that discovery was requested from Shell Chemical and Ms. Kline rather than merely cross-reference Exhibits 1-3 of the Gidley Declaration (D.I. 6). I regret these oversights. I respectfully maintain, however, that these inadvertent errors were not the product of bad faith or the lack of candor necessary for this Court to find a violation of Model Rule 3.3(d) in this circumstance.

## MY ROLE IN THIS MATTER

5. My involvement in this matter began on July 18, 2024 when White & Case Partner Peter Carney, who since retired at the end of 2024, requested my availability to join an existing team working on § 1782 on behalf of Vestolit. My help was needed because one of the associates on the team was due to leave the firm by the end of July. After speaking with Mr. Carney, I set out to learn about the case and reviewed prior research and related materials on the possible use of § 1782 discovery in support of an ongoing antitrust proceeding in the Netherlands.

6. In the remainder of July and August 2024, I worked periodically on the matter, primarily in coordination with Mr. Carney. My efforts during those months focused on assisting in factual research to identify any U.S. affiliates of Shell which were involved with ethylene and ethylene-derived products. I understood that this research would be used in identifying potential U.S. targets for § 1782 discovery in aid of the Dutch proceeding. According to my journal entries, I billed approximately

3

<u>14 hours</u> on this matter in July and August 2024.

7. In September and October 2024, I continued to work on the case, principally with Mr. Carney, as the team, in coordination with the client, Dutch co-counsel, and other stakeholders, developed and considered the initiation of a § 1782 proceeding in U.S. court. My primary tasks during this period included conducting additional factual research on Shell's U.S. affiliates and assisting in the development of the overall § 1782 strategy and legal arguments. In support of the latter task, I reviewed examples of § 1782 submissions made in other cases. I reviewed these materials to understand a § 1782 case's typical course—such as the number of filings and anticipated timelines for motions practice—as well as the procedures and requirements for initiating a § 1782 action. I billed a total of approximately <u>11.5 hours</u> on this matter in September and October 2024.

**I.     MY CONTRIBUTIONS TO THE MEMORANDUM OF LAW**

8. I contributed to the Memorandum of Law in preparing initial drafts, implementing comments received from partners and co-counsel, undertaking legal and factual research, and assisting in preparing the brief for submission. On November 1, 2024, to further conversations with Mr. Carney and others, I began drafting a preliminary outline of the Memorandum of Law in support of Vestolit's anticipated initiation of a § 1782 proceeding in this District. In support of drafting the initial outline of the Memorandum of Law, I researched and reviewed precedents

to develop my understanding of how U.S. courts interpret the statutory requirements under § 1782 and the discretionary factors set forth in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004). Over the course of November 2024, Mr. Carney and I developed the initial outline into a draft brief.

9. In mid-November 2024, I first learned—from communications with Mr. Carney, Mark Gidley, and our Dutch co-counsel at Houthoff—about the November 11, 2024 correspondence from counsel for Shell Chemical Europe, B.V. ("SCE") (D.I. 7-9), which disclosed the Mandate Agreement (D.I. 7-7). Upon review of the Mandate Agreement, I became aware of the existence of Ms. Kline and her role as President of Shell Chemical and the signatory of the mandate on behalf of Shell Chemical. In view of the disclosure of the Mandate Agreement, and through coordination with the § 1782 team (primarily with Mr. Carney), I worked to further develop the draft Memorandum of Law, as well as the draft document requests we sought to serve on Shell Chemical. According to my journal entries I billed approximately <u>24 hours</u> to this matter in November 2024. Although some of this time was devoted to research and discussions with the team, I would characterize these efforts as generally contributing to the development of the Memorandum of Law.

10. In December 2024, my volume of work on the Memorandum of Law increased as we targeted a filing before the winter holiday season. In the weeks

leading up to the December 20, 2024 filing, I continued to work primarily with Mr. Carney and Frank Hogue to revise and incorporate additional comments to the draft Memorandum of Law. These revisions included describing the circumstances related to the Mandate Agreement and, given the recent disclosure of the Mandate Agreement, adding the request to subpoena Ms. Kline in view of her role as Shell Chemical's President and signatory of that mandate on behalf of Shell Chemical. I also researched and shared with Mr. Hogue examples of other § 1782 cases to further the team's understanding of the contents of a typical filing.

11. For the period of December 1, 2024 through December 20, 2024 (the filing date), I billed approximately <u>42 hours</u> to this matter. The majority of this time was spent drafting or revising the Memorandum of Law, conducting research and reviewing documents in support of such drafting, and finalizing the document for submission.

## II.   MY CONTRIBUTIONS TO THE APPLICATION

12. I contributed to drafting and revising the Application. On December 10, 2024, I prepared an initial draft of the Application. None of the drafts of the Application that I prepared or helped revise directly referenced the request to serve a subpoena on Ms. Kline. In support of drafting the Application, I reviewed multiple § 1782 submissions in other cases, including in cases filed in this District, to understand customary practice and what parties typically include in such documents.

6

From my review of those examples, I understood that typical § 1782 applications are relatively short (1-3 pages) and contain a summary of the legal arguments discussed in the longer memorandum of law. I realize now that these examples were not necessarily indicative of how the Application should have been prepared in the instant case, particularly as to the subpoena request to Ms. Kline as President of Shell Chemical, which should have been clear on the Application's face.

13. Because the Application was a short document and largely informed by the Memorandum of Law, I billed only approximately <u>2-3 hours</u> (out of approximately 42 total hours in December) drafting and revising the Application.

14. In total, I billed approximately <u>92 hours</u> to the § 1782 matter between when I started on the case on July 18, 2024 and the December 20, 2024 submission.

### III. MODEL RULE 3.3(d)

15. ABA Model Rule 3.3(d) states that "[i]n an *ex parte* proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer that will enable the tribunal to make an informed decision, whether or not the facts are adverse." *See also* ABA Model Rule 3.3(d), cmt. 14 (a "lawyer for the represented party" in an *ex parte* proceeding "has the [] duty to make disclosures of material facts known to the lawyer and that the lawyer reasonably believes are necessary to an informed decision").

16. In my contributions to the Application and Memorandum of Law, I did

not intentionally omit any known material facts. By contrast, I endeavored in my contributions to inform the Court of the relevant information needed to reach an informed decision on the relief requested under § 1782. For instance, Vestolit and Celanese discussed in their Memorandum of Law Ms. Kline's role and her relevance to the requested discovery based. *See* Mem. of Law 12 ("[A]pplicants seek a subpoena for deposition testimony from Shell Chemical's President Marla Kline, who signed the Shell Chemical Mandate Agreement."); *id.* at 19 ("Shell Chemical's President, Marla Kline, signed the Shell Chemical Mandate Agreement, and therefore has substantive knowledge of that agreement and Shell Chemical's relationship with SCE [Shell Chemicals Europe, B.V.]."). In support of those statements, Vestolit and Celanese submitted the Cornelissen Declaration (D.I. 7) explaining (at ¶¶ 18-19, 33-34) the relevance of Shell Chemical and the Shell affiliate mandate agreements to the Dutch Proceeding. The Cornelissen Declaration also attached relevant exhibits supporting these propositions, notably the Mandate Agreement (D.I. 7-7).

17. With the benefit of the Court's Memorandum Order, I now see that these passing references to Ms. Kline in the Memorandum of Law did not provide the Court with a legal argument for why Ms. Kline herself may be "found" in the District of Delaware within the meaning of § 1782. I further acknowledge that the references in the Application and Proposed Order, which only cross-referenced the

proposed subpoenas attached as Exhibits 1-3 to the Gidley Declaration, were not sufficiently clear that Vestolit and Celanese sought authorization to serve a subpoena on Ms. Kline. I apologize to the Court for any confusion or inconvenience these unintentional oversights caused.

18. I am available to further discuss with the Court any questions regarding this matter and provide additional information if that would assist the Court.

*  *  *

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 28, 2025, at Washington, DC

Respectfully submitted,

/s/ _____
Alec Albright