UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

In re Application of

VESTOLIT GMBH

and

CELANESE EUROPE B.V.,

*Applicants*,

To Obtain Discovery for Use in a
Foreign Proceeding Pursuant to
28 U.S.C. § 1782

Misc. Action No. 24-cv-01401-CFC

DECLARATION OF JACLYN PHILLIPS
IN RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE

I, JACLYN PHILLIPS, hereby declare:

1. I am an attorney with the law firm White & Case LLP. I have been admitted *pro hac vice* as counsel to Applicant Vestolit GmbH ("Vestolit") in the above-captioned matter. I am licensed to practice law in the State of New York and the District of Columbia. I was an associate at White & Case when Vestolit's § 1782 filings were submitted. I was elevated to Partner effective January 1, 2025.

2. I write in response to the Court's Memorandum Order requiring "each of the seven lawyers whose name appears on the Application (D.I. 1) and on the memorandum filed in support of the Application (D.I. 5) [to] show cause why that

lawyer should not be deemed to have violated Model Rule 3.3(d)," and to "explain how that lawyer contributed to the Application and supporting memorandum and how much time that lawyer spent making that contribution." I appreciate the opportunity to respond to the Court's Memorandum Order and am available to respond to any further inquiries from the Court.

3. Model Rule 3.3(d) provides that "[i]n an ex parte proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer that will enable the tribunal to make an informed decision, whether or not the facts are adverse." Model Rules of Prof'l Conduct R. 3.3(d). The commentary to the rule explains that a lawyer in an ex parte proceeding has a "duty to make disclosures of material facts known to the lawyer and that the lawyer reasonably believes are necessary to an informed decision." *Id.* 3.3(d), cmt. 14.

4. I respectfully submit that I should not be found to have violated Model Rule 3.3(d) because I was not aware of any material facts necessary to an informed decision that were omitted from the submissions to the Court. My role at the time the submission was drafted and filed, and when the team decided to seek deposition testimony from Ms. Kline due to her role in signing the Shell Chemical LP mandate agreement, was limited. For that reason, I did not evaluate whether there was a need to analyze Ms. Kline's location separately from that of her employer, Shell Chemical, LP, for purposes of evaluating § 1782's statutory factors. I do not have

any reason to believe that any attorney involved in the preparation of the submissions intended to withhold material facts or mislead the Court.

5. I sincerely apologize to the Court for the oversights in the submission concerning Ms. Kline, including that the Application and the Memorandum of Law did not make clearer and more prominent the request for a deposition directed to Ms. Kline and that the submission omitted the legal argument concerning where Ms. Kline, in her capacity as President of Shell Chemical LP, "resides" or "is found" for the purposes of § 1782.

6. My first contribution to the work on § 1782 for Vestolit involved reviewing and analyzing initial legal research concerning § 1782 generally and early assessments of the ability to seek § 1782 discovery related to Vestolit's defenses in the Dutch proceedings brought by Shell Chemicals Europe B.V. ("SCE").

7. Beginning in February 2024, I was involved in initial legal research concerning the statutory requirements of § 1782 and case law applying the statute, as well as the application of that law to our anticipated petition to seek discovery for Vestolit's defenses in the Dutch proceeding. In this initial phase, I worked with White & Case LLP Partners Peter Carney (who retired December 31, 2024) and Mark Gidley, as well as various associates. The research included analyzing the § 1782 statutory requirements and discretionary factors, including where corporate entities can "reside" or are "found" under § 1782. At this time, we had no reason to

anticipate seeking deposition testimony of Ms. Kline or any specific individual, in either a corporate or personal capacity. Accordingly, our research at this time did not cover that issue. I spent approximately 13 hours from February through September 2024 working on this research and legal analysis.

8. In addition to legal research, I was also involved in factual analysis and development concerning SCE's claims and the potential relevance of other Shell entities in the U.S. This factual assessment included an initial review of Shell entities in the U.S. and review of initial drafts of potential document requests. Additionally, I was involved in drafting letters to SCE seeking information about Shell entities that SCE alleged mandated SCE to represent them in the Dutch Proceeding and SCE's and its represented entities' ethylene sales margin data. I spent approximately 7 hours from March through October 2024 working on these fact-related issues.

9. Finally, I participated in high-level strategy discussions at various times from April through November 2024. I spent approximately 6 hours on this aspect of the work in this period.

10. On November 14, 2024, I received SCE's responses to Vesolit's letters discussed above. From those responses, we learned that SCE received a mandate to bring claims in its own name to recover economic losses SCE alleges were suffered by Shell Chemical LP. After receiving this information, I recall being involved in

4

short discussions concerning the impact of SCE's responses on our contemplated § 1782 petition seeking discovery from Shell Chemical LP. At this time, I was not aware that we were contemplating seeking a deposition from Ms. Kline or any other specific individual.

11. While it is my understanding that that the initial research and factual development I participated in was used to inform the final submissions, I did not have drafting responsibility for the Application or the memorandum filed in support of the Application. I knew that my colleagues, Partners Peter Carney, Mark Gidley, and Frank Hogue, and associate Alec Albright, were handling the effort at this point and working closely with Vestolit's Dutch Counsel, Houthoff Coöperatief u.a., to further develop the submissions. I was also aware that White & Case attorneys were working with counsel for Celanese Europe B.V. ("Celanese"), including Graham Meli at Wachtell, Lipton, Rosen & Katz. In December, Frank Hogue informed me that Celanese had decided to join the petition.

12. In December, Frank Hogue informed me that in addition to discovery directed to Shell Chemical LP, we would be seeking a deposition from Ms. Marla Kline, President of Shell Chemical LP. I was aware of the relevance of Ms. Kline's testimony due to her role as the signatory of the Shell Chemical LP mandate agreement. At this time, however, others on the team were still handling the drafting of the submissions and any subsequent research and analysis.

13. I regret the burden the submissions put on the Court. I appreciate the benefit of having the Court's order to address the issues the Court identified. We further appreciate the opportunity to address the Court's concerns in Vestolit and Celanese's response to the Court's Memorandum Order.

I declare under penalty of perjury that the foregoing is true and correct. Executed on January 28, 2025, at Washington, D.C.

*[signature]*

Jaclyn Phillips