# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re Application of<br><br>VESTOLIT GMBH<br><br>and<br><br>CELANESE EUROPE B.V.,<br><br>*Applicants*,<br><br>To Obtain Discovery for Use in a Foreign Proceeding Pursuant to 28 U.S.C. § 1782 | Misc. Action No. 24-cv-01401-CFC |

### DECLARATION OF GRAHAM W. MELI
### IN RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE

I, GRAHAM W. MELI, hereby declare:

1.  I am an attorney licensed to practice law in the State of New York and am a partner at Wachtell, Lipton, Rosen & Katz. I have been admitted *pro hac vice* as counsel to Applicant Celanese Europe B.V. ("Celanese") in the above-captioned matter. I respectfully submit this declaration in response to the Court's January 14, 2025 Memorandum Order, which orders that each lawyer whose name appears on the Application (D.I. 1) and on the memorandum filed in support of the Application (D.I. 5) show cause why that lawyer should not be deemed to have violated Model Rule 3.3(d).

2. My firm's client Celanese is a co-defendant of Vestolit GmbH ("Vestolit") in an ongoing proceeding in the Amsterdam District Court (the "Dutch Proceeding") initiated by Shell Chemicals Europe, B.V. ("SCE"). I have been providing Celanese strategic and U.S.-law advice in connection with the Dutch Proceeding since June 2024, in conjunction with Celanese's Dutch litigation counsel, De Brauw Blackstone Westbroek N.V. ("De Brauw"). I understand that White & Case LLP has served in a similar capacity for Vestolit, in conjunction with Vestolit's Dutch litigation counsel, Houthoff.

3. I have given attention to the issue of potentially seeking discovery from an affiliate of SCE under 28 U.S.C. § 1782 on several occasions. Beginning in July 2024, I considered the potential grounds and basis for a § 1782 application, including by reviewing legal research and discussing the issue with counsel for Vestolit and with my client, Celanese. In December 2024, White & Case informed me that Vestolit intended to proceed with a § 1782 application in this Court in relation to Shell Chemical LP ("Shell Chemical"), a Delaware entity, and requested that Celanese consider joining. Beginning on December 10, 2024, White & Case provided me drafts of papers in support of the potential application, which I reviewed and commented upon as set forth in more detail below. After receiving the draft papers, Celanese determined that it would join Vestolit's application. My

time records indicate that between July and December 2024, I spent a total of about 14.5 hours on issues relating to a potential § 1782 application.

4. My role in connection with the papers filed in support of the § 1782 application in this Court consisted primarily of reviewing drafts prepared by White & Case, providing comments to White & Case, consulting with Celanese, and facilitating review by Celanese's Dutch counsel at De Brauw. I was not the principal drafter of any of the papers, but I endeavored to provide comments to ensure that relevant information was presented in a clear and accurate manner and that Celanese was comfortable in joining.

5. Most of my time spent reviewing the draft papers was focused on the memorandum of law in support of the application (D.I. 5), which set forth the grounds for Vestolit and Celanese's position. I provided White & Case several sets of comments on drafts of the memorandum of law between December 17 and 20, 2024. I also commented on the proposed document requests directed to Shell Chemical (D.I. 6-1). White & Case copied me on an email attaching a draft of the two-page Application (D.I. 1) on December 20, 2024, but I did not provide comments on that document.

6. The memorandum of law was reviewed not only by me, but also by Celanese and its Dutch counsel at De Brauw. De Brauw focused on ensuring that the memorandum of law accurately described the Dutch Proceeding, including the

scope of discovery available in that proceeding.  I conveyed De Brauw's comments on the memorandum of law to White & Case.  I was aware that De Brauw also worked directly with Vestolit's Dutch counsel at Houthoff to edit the Cornelissen Declaration (D.I. 7) to ensure its accuracy.

7. The Court notes that the Application (D.I. 1) states that Vestolit and Celanese seek to obtain discovery "from Shell Chemical" without adding that they also seek discovery "from Marla Kline," the President of Shell Chemical.  D.I. 11 at 5.  Reviewing it now, the Court is correct that the Application, as well as the accompanying Proposed Order, should have been clearer about the request for Ms. Kline's deposition.  I am not aware, however, of any effort to conceal from the Court that Vestolit and Celanese sought a deposition of Ms. Kline.  Other papers that Vestolit and Celanese filed in support of the Application reference their request for this deposition and present the material facts and documents that the parties believed were necessary for the Court's review and consideration based on the information known to them at the time.

8. The memorandum of law, which sets forth in more detail the grounds for the Application, states that "applicants seek a subpoena for deposition testimony from Shell Chemical's President Marla Kline, who signed the Shell Chemical Mandate Agreement" on behalf of Shell Chemical, citing to the copy of the proposed deposition subpoena attached as Exhibit 3 to Mark Gidley's

4

Declaration. D.I. 5 at 12. The memorandum of law also discusses whether "Vestolit and Celanese's deposition subpoenas" would "pose an unreasonable burden on Shell Chemical." *Id.* at 19. It then references the two proposed deponents: first, "Shell Chemical's President, Marla Kline," who "signed the Shell Chemical Mandate Agreement, and therefore has substantive knowledge of that agreement and Shell Chemical's relationship with SCE"; and second, "a Rule 30(b)(6) witness with relevant knowledge of Shell Chemical's involvement in the global markets for ethylene and ethylene derivatives." *Id.*

9. In addition to these references to a deposition of Ms. Kline in the memorandum of law, Mr. Gidley's declaration states that it attaches a "copy of the subpoena Petitioners seek to serve on Marla Kline, President of Shell Chemical, signatory to the Mandate Agreement between Shell Chemical and SCE, seeking testimony for use in the Dutch Proceeding." D.I. 6, ¶ 4. The subpoena attached to the declaration is addressed to "Marla Kline, President of Shell Chemical LP." D.I. 6-3. Moreover, the Cornelissen Declaration attaches a copy of the Shell Chemical Mandate Agreement, dated October 22, 2024, which is executed "by Marla Kline, President of Shell Chemical LP, a Delaware limited partnership, on behalf of said partnership." D.I. 7-7 at 4.

10. The Court notes that the memorandum of law does not discuss Ms. Kline's residency and "says nothing that suggests that Ms. Kline can be found in

5

Delaware," instead stating only that Shell Chemical resides in the District of Delaware. D.I. 11 at 4. Whether Ms. Kline herself, separate and apart from Shell Chemical, can be deemed "found" in this District for purposes of §1782 is a legal issue that Vestolit and Celanese did not identify to address in their papers. I am not aware, however, of any effort to withhold from the Court "material facts known to" me or any other lawyer who worked on the papers submitted to the Court. ABA Model Rule 3.3(d); *see also id.*, cmt. 14 (rule applies to "material facts known to the lawyer and that the lawyer reasonably believes are necessary to an informed decision"); ABA Model Rule 1.0 ("'known' … denotes actual knowledge of the fact in question ….").

11. When reviewing the memorandum of law, I considered and consulted with my client about the request for Ms. Kline's deposition. In doing so, I focused on whether Ms. Kline was likely to have relevant personal knowledge that merited deposing her, as an officer of Shell Chemical, beyond the request for a Rule 30(b)(6) deposition. The memorandum of law states that the parties seek Ms. Kline's deposition because she signed the Shell Chemical Mandate Agreement and thus has knowledge of that agreement and Shell Chemical's relationship with SCE. *See* D.I. 5 at 19.

12. I was not aware of Ms. Kline's state of residence at the time I reviewed the memorandum of law, although it has now come to my attention that

she executed the Shell Chemical Mandate Agreement in Texas.  Nor did I identify at the time of my review the legal issue of whether Ms. Kline, separate and apart from Shell Chemical, could be "found" in Delaware for purposes of § 1782.  I thus did not consider whether Ms. Kline's state of residence was a "material fact" relevant to the Court's "informed decision" on the requested deposition subpoena to Ms. Kline.  *See* ABA Model Rule 3.3(d).

13.    As noted, I understood that Ms. Kline is the President of Shell Chemical, an entity organized under Delaware law, and executed the Shell Chemical Mandate Agreement on behalf of that Delaware entity.  *See* D.I. 7-7 at 4 (agreement executed "by Marla Kline, President of Shell Chemical LP, a Delaware limited partnership, on behalf of said partnership").  In my experience, Delaware entities can be expected to make their officers available for depositions in response to discovery requests issued in Delaware.  *See, e.g.*, *In re Dole Food Co. S'holder Litig.*, 110 A.3d 1257, 1262 (Del. Ch. 2015) ("Through its jurisdiction over a corporation, a court can compel the biological persons who serve as its directors, officers, and managing agents to appear as witnesses at trial or for a deposition in a particular location."); *In re Activision Blizzard, Inc. S'holder Litig.*, 86 A.3d 531, 552 (Del. Ch. 2014) (similar).  It is for this reason that I did not find making the request to this Court to be unusual and why the memorandum of law discusses a

deposition of Ms. Kline, as President of Shell Chemical, in terms of whether it would impose an "unreasonable burden on Shell Chemical." D.I. 5 at 19.

14. The Court is correct that Vestolit and Celanese did not address the legal issue of whether § 1782 permits this District to issue a subpoena not only to Shell Chemical, but also to Ms. Kline herself as President of that entity, which is how the subpoena attached to the Gidley Declaration is framed. *See* D.I. 6-3 (subpoena addressed to "Marla Kline, President of Shell Chemical LP"). As noted, I did not identify this legal issue at the time of my review of the papers in support of the Application. The parties have now endeavored to provide relevant legal authority on this issue in the memorandum being submitted in response to the Court's Order. I respectfully submit, however, that the omission of this legal issue in the parties' initial memorandum of law did not constitute a lack of candor about material facts that were known to me and that I reasonably believed to be necessary to the Court's informed decision, as would be required to find a violation of Model Rule 3.3(d).

15. Celanese and I regret the additional burden that this matter has imposed on the Court. I am available to answer any further questions that the Court may have or to provide any additional information.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 28, 2025, at New York, New York.

_____
Graham W. Meli

9