IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re Application of<br><br>VESTOLIT GMBH<br><br>and<br><br>CELANESE EUROPE B.V.,<br><br>*Applicants*,<br><br>To Obtain Discovery for Use<br>in a Foreign Proceeding<br>Pursuant to 28 U.S.C.<br>§ 1782 | Misc. No. 24-cv-1401-CFC |

Samuel Taylor Hirzel, II, Elizabeth A. DeFelice, HEYMAN ENERIO GATTUSO & HIRZEL LLP, Wilmington, Delaware; J. Mark Gidley, J. Frank Hogue, Jaclyn Phillips, Alec Albright, WHITE & CASE LLP, Washington, D.C.; Graham W. Meli, WACHTELL, LIPTON, ROSEN & KATZ, New York, New York

*Counsel for Petitioners*

David A. Dorey, Gregory P. Ranzini, BLANK ROME LLP, Wilmington, Delaware; Kelsey M. Machado, BAKER & McKENZIE LLP, Houston, Texas; Carson J. Henderson, BAKER & McKENZIE LLP, Dallas, Texas

*Counsel for Respondent*

## MEMORANDUM OPINION

November 24, 2025
Wilmington, Delaware

<em>[signature]</em><br>
COLM F. CONNOLLY<br>
CHIEF JUDGE

Shell Chemical LP (Shell Chemical) has filed a Motion to Vacate Order Regarding Application to Obtain Discovery for Use in a Foreign Proceeding and to Dismiss this Action, to Quash the Subpoenas, or, Alternatively, for a Stay of the Proceedings. D.I. 27. I will grant the motion.

## I.   BACKGROUND

In July 2020, the European Commission ruled that four ethylene purchasers, including Vestolit GmbH (Vestolit) and Celanese Europe B.V. (Celanese), formed a cartel in violation of antitrust law between 2011 and 2017. D.I. 7-1. The Commission found that the purchasers coordinated their price negotiation strategy to influence the ethylene Monthly Contract Price (MCP), an intermediate benchmark for ethylene prices, with the goal of lowering the ethylene sales price below the competitive level in Belgium, France, Germany, and the Netherlands. D.I. 7 ¶¶ 5, 16; D.I. 29 ¶¶ 9–11. The Commission imposed fines but did not make any findings about the collusion having actual effects on the market or lowering the price of ethylene. D.I. 7-1 ¶ 71; D.I. 7 ¶ 16; D.I. 29 ¶ 10.

In March 2023, Shell Chemicals Europe, B.V. (SCE), an ethylene seller, sued the cartelists in a follow-on private damages litigation in the Amsterdam District Court (the Dutch Court). D.I. 7 ¶¶ 5, 17–19; D.I. 29 ¶ 22. SCE alleges in

its writ of summons filed with the Dutch Court that the cartelists are jointly and severally liable for acting in concert to keep the MCP artificially low, causing SCE to sell ethylene and ethylene derivatives at a deflated price. D.I. 7-2 ¶¶ 1–4; *see* D.I. 7 ¶¶ 6, 17–19. In October 2023, SCE submitted to the court a report by the economic consultancy firm AlixPartners and a Damages Calculation Memorandum to substantiate its damages claim of over 1.2 billion in United States dollars. D.I. 29-1; D.I. 29-2; *see* D.I. 7 ¶¶ 20–21; D.I. 29 ¶¶ 22, 24.

After disagreement between the parties about access to documents and confidentiality, the Dutch Court in February 2024 ordered the parties to maintain a "Confidentiality Ring" accessible only to the Defendants' lawyers and external counsel and required SCE to disclose data underlying its damages calculation and AlixPartners' report. D.I. 29-3; D.I. 29-4; D.I. 7 ¶ 22; D.I. 29 ¶¶ 23, 24; D.I. 37-1 ¶¶ 8, 9. The Court also ruled that if Defendants required additional documents to validate SCE's damages reports, they could enter further discussions with SCE and, if those discussions were unproductive, file briefs requesting discovery with the court by July 2024. D.I. 37-1 ¶ 10; D.I. 29 ¶¶ 25, 28. After SCE provided them various documents, the cartelists filed briefs in July and November confirming that they had all the data they needed related to the damages calculation. D.I. 29-6; D.I. 29-8; *see* D.I. 29 ¶¶ 32–34; D.I. 37 ¶¶ 12–13.

Separately, on March 27, 2024, Vestolit filed a discovery motion under Section 843a of the Dutch Civil Code of Procedure seeking documents from SCE on margin data, pricing information, and other records to support its defense and a potential counterclaim of seller-side collusion. D.I. 29-10 ¶¶ 9.1, 9.4.21, 9.4.22; *see* D.I. 7 ¶¶ 26, 27; D.I. 29 ¶¶ 27, 36, 37. Vestolit alleged in the motion that preliminary investigations suggested that SCE was engaged in collusion with unnamed third-party suppliers to sell ethylene at higher prices than expected under prevailing market conditions, and it attached to the motion an expert report explaining that higher margins by suppliers during the infringement period indicated supply-side collusion. D.I. 29-10 ¶ 9.1; D.I. 29-11; *see* D.I. 36-1 ¶ 6.7. SCE filed a response in opposition to the motion in May 2024. D.I. 29-12; D.I. 29-13; D.I. 29 ¶¶ 38, 44.

On October 16, 2024, while the discovery motion was pending, Defendants served SCE with two letters requesting more information from SCE: (1) a list of Shell Entities represented by SCE and copies of mandates authorizing SCE to act on the Shell entities behalf, and (2) ethylene sales margin data of SCE and SCE's represented entities from 2010–2020 in Europe, North America, and Asia. D.I. 7-5; D.I. 7-6; D.I. 7 ¶¶ 30–32; D.I. 29 ¶ 39. SCE's original writ of summons stated that "[al]l Shell entities (potentially) affected by the Ethylene cartel have assigned

3

the collection of their respective claims by (indirect) mandate to SCE." D.I. 7-2 ¶ 14. Defendants requested the names of the impacted Shell entities and proof of a mandate to consider a potential pass-on defense (i.e., that SCE was able to "pass-on" its damages or the alleged ethylene undercharges to ethylene purchasing groups). D.I. 7 ¶¶ 6–8, 21. In November, SCE provided the cartelists Mandate Agreements from four of the Shell entities represented by SCE, including Shell Chemical. D.I. 7 ¶ 34; D.I. 29 ¶ 40. SCE declined to disclose ethylene margin data, explaining that it viewed the request as a fishing expedition and referring to the pending hearing on the 843a motion. D.I. 7-8; D.I. 7 ¶ 35; D.I. 29 ¶ 41.

On December 20, 2024, Vestolit and Celanese (collectively, Applicants) filed in this Court an *ex parte* Application pursuant to 28 U.S.C. § 1782 for an order to obtain discovery from Shell Chemical for use in an ongoing proceeding in a Dutch Court. D.I. 1. I granted the Application in part and denied it in part. D.I. 22 at 4. As relevant here, I granted the Application insofar as it requested leave to serve on Shell Chemical two subpoenas—the first for ten categories of documents and the second for a deposition of a corporate representative about topics similar to those categories. D.I. 22 at 4; *see* D.I. 6-2; D.I. 5 at 12. The information covered by the ten categories includes, among other things, "Mandates/Authorizations of SCE to Pursue the Dutch Damages Action," "Shell's

4

Cracker Margins," "Ethylene Pricing and Ethylene-specific Margins," and "Competitor Contacts, Industry Reports, and Document Hold." D.I. 6-1 at 8–13; D.I. 5 at 11–12. Because the Application was *ex parte*, I expressly stated in the relevant order that "[n]othing in th[e] order shall be construed to preclude Shell Chemical LP from timely moving to quash a subpoena or from challenging alleged deficiencies in the Application." D.I. 22 at 5.

On March 12, 2025, Applicants served the two subpoenas on Shell Chemical. D.I. 23; D.I. 24. On April 23, Shell Chemical filed the pending motion. D.I. 27. On May 7, before Applicants filed their answering brief in opposition to the motion, the Dutch Court denied Vestolit's 843a Disclosure Motion. D.I. 36-1. The court found that for the time being, Vestolit has not shown a legitimate interest in ethylene margins for its defense or support for its supply-side collusion counterclaim and dismissed the request for remaining documents as a "fishing expedition." D.I. 36-1 at 6–8. Following the ruling, Shell Chemical asked Applicants to withdraw the subpoenas, but Applicants declined and filed their Answering Brief. D.I. 42-1; D.I. 37. Shell Chemical then filed its Reply Brief and requested reasonable expenses for litigating the motion. D.I. 40.

## II.   LEGAL STANDARD

A district court has the authority to grant an application under § 1782 when three statutory conditions are met: (1) the person from whom discovery is sought

"resides or is found" within the district; (2) the discovery is "for use in a proceeding before a foreign or international tribunal"; and (3) the application is made by an "interested person." 28 U.S.C. § 1782(a); *see also In re Bayer AG*, 146 F.3d 188, 193 (3d Cir. 1998); *see generally ZF Auto. US, Inc. v. Luxshare, Ltd.*, 142 S. Ct. 2078, 2089 (2022) (defining "foreign or international tribunal"). If the statutory conditions are satisfied, the decision to grant a § 1782 application lies within the district court's discretion. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004). The Court identified in *Intel* four factors relevant to that discretionary determination: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding" since such a person may possess evidence "unobtainable absent § 1782(a) aid"; (2) "the nature of the foreign tribunal," the "character" of the foreign proceedings, and "the receptivity" of the foreign court to federal "judicial assistance"; (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions"; and (4) whether the request is "unduly intrusive or burdensome." *Id.* at 264–65. "A court should apply these factors in support of § 1782's 'twin aims' of 'providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts.'" *In re Biomet Orthopaedics Switzerland GmBh*, 742 F. App'x 690, 696 (3d Cir. 2018) (quoting *Intel*, 542 U.S.

at 252). The party opposing discovery has the burden to demonstrate any "facts warranting the denial" of an application. *In re Chevron Corp.*, 633 F.3d 153, 162 (3d Cir. 2011) (internal quotation marks and citation omitted).

Recipients of a subpoena served pursuant to § 1782 can "raise objections and otherwise exercise their due process rights by motions to quash." *In re Mota*, 2020 WL 95493, at *2 (D. Del. Jan. 8, 2020) (internal quotation marks, brackets, and citation omitted). A court should vacate a § 1782 order and quash the subpoenas if the applicant fails to meet the statutory factors or the four *Intel* factors weigh towards quashing the discovery requests. *See e.g., Pinchuk v. Chemstar Prods. LLC*, 2014 WL 2990416, at *2–4 (D. Del. June 26, 2014).

## III.   DISCUSSION

Shell Chemical argues that I should vacate the order granting § 1782 discovery because the discovery sought has "no use" in the Dutch Court proceedings, failing to meet the statutory requirement. It also argues that the *Intel* factors and "twin aims" of the statute favor my vacating the order on discretionary grounds. D.I. 28 at 8.

### A.   Section 1782's Statutory Requirements

Shell Chemical argues that § 1782's second condition is not met here because Applicants fail to show that the "evidence sought is something that will be employed with some advantage or serve some use in the proceeding." D.I. 28 at 9

7

(quoting *Certain Funds, Accounts and/or Investment Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 120 (2d Cir. 2015)). In Shell Chemical's view of things, Applicants' prior representations to the Dutch Court and the court's reasoning in dismissing the 843a Disclosure Motion indicate that Applicants have no evidence to obtain the documents for either their defense or counterclaims. D.I. 28 at 9–10; D.I. 40 at 1–2. I disagree.

"[D]iscovery sought pursuant to § 1782 need not be necessary for the party to prevail in the foreign proceeding," as a necessity requirement would "entail a painstaking analysis not only of the evidence already available to the applicant, but also of the amount of evidence required to prevail in the foreign proceeding"—requiring "interpretation and analysis of foreign law" that "can be fraught with danger." *Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015) (internal quotation marks and citations omitted). "Under § 1782, an applicant may seek discovery of *any* materials that can be made use of in the foreign proceeding to increase her chances of success." *Id.* at 299 (emphasis added). The "for use" requirement is "afforded broad interpretation," and the "sought-after evidence need not be admissible or even discoverable under the rules of the foreign jurisdiction." *Deposit Ins. Agency v. Leontiev*, 2018 WL 3536083, at *3 (S.D.N.Y. July 23, 2018) (citations omitted). "In fact, the foreign proceeding need not even yet be

8

under way, so long as it is 'within reasonable contemplation.'" *Id.* (citing *Intel*, 542 U.S. at 259).

Vestolit and Celanese have submitted credible sworn declarations to support their assertion that the documents requested via § 1782 could be used for various purposes in the Dutch Court proceedings, such as understanding pass-on damages, geographic comparison of margins, and checks on models to rebut SCE's damages. D.I. 37-1 ¶¶ 30–31. While the Dutch Court denied Vestolit's 843a Disclosure Motion, the scope of the document requests at issue in that motion is narrower than the scope of the document requests covered by the § 1782 subpoenas, and the Dutch Court's ruling was not final on whether the request for margin data has use for Applicants' defense in the Dutch Court proceeding. *Compare* D.I. 36-1, Appendix I *with* D.I. 6-1 and D.I. 6-2; *see* D.I. 36-1 ¶ 6.8 ("*it is not yet clear whether Vestolit will have to compare the margins achieved on the sale of ethylene in its defense*") (emphasis added); *see* D.I. 37-1 ¶¶ 27–31.

Accordingly, Amgen has satisfied the "for use" requirement of § 1782.

**B.  Application of the *Intel* Factors**

Next, Shell Chemical argues that all four *Intel* factors weigh in favor of prohibiting discovery. D.I. 28 at 11.

9

1. *Intel* **factor #1**

The first factor favors Shell Chemical. This factor asks whether the discovery sought is "unobtainable" in the foreign forum because it is outside the foreign tribunal's jurisdictional reach. *Intel*, 542 U.S. at 264.

The parties agree that Shell Chemical is not a party in the Dutch Court proceeding. D.I. 28 at 11; D.I. 37 at 11. Applicants argue that the appropriate inquiry on the first factor is "whether *the entity from which the discovery is sought is within the [foreign] court's reach.*" D.I. 37 at 12 (citation omitted). But Applicants mischaracterize the first factor, which the Court articulated as follows in *Intel*:

> [W]hen the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad. A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence. In contrast, nonparticipants in the foreign proceeding *may* be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, *may* be unobtainable absent § 1782(a) aid.

*Intel*, 542 U.S. at 264 (citations omitted) (emphasis added). The first factor concerns not simply whether the *party* from whom discovery is sought is a participant in the foreign proceeding, but whether the *discovery is obtainable* in the foreign proceeding absent § 1782 aid. *See id.*

10

Here, Shell Chemical's documents are within reach in the Dutch Court proceeding: SCE has agreed to "pledge evidence delivery on behalf of Shell Chemical[] LP," and Shell Chemical has "committed to provide SCE with evidence in [its] possession" if "the Dutch Court has imposed that delivery of evidence on SCE." D.I. 29-15 ¶ 27. SCE has attached a sworn declaration that "given the nature of the proceedings and the Mandate Agreement between [Shell Chemical] and SCE, [Shell Chemical] agrees to provide any documents in its possession that the Dutch Court orders SCE to produce within the confines of the underlying Dutch litigation." D.I. 30 ¶ 4. Many of the requests within the § 1782 application are identical to the requests in the 843a motion. *Compare* D.I. 6-1 at 8–13 ("Documents sufficient to show by month Cracker Margins" and "Documents relating to the ethylene pricing") *with* D.I. 36-1 at 11–12 ("The steam cracker margins of steam crackers of SCE" and documents "with respect to the pricing of ethylene"). And any information related to Shell Chemical can be obtained in the Dutch Court given the mandate, SCE's promises, and Dutch case law. D.I. 41 ¶¶ 31–34 ("a [Dutch] court can order a party to the proceedings to commit to obtaining access to certain documents which are in the custody of a third party, such as . . . a company that is (contractually) obliged to provide the documents").

11

In *In re Chevron*, the Third Circuit found that factor one supported granting § 1782 discovery because it would have been "fruitless" for the Ecuadorian court to order production of documents from a separate entity outside of Ecuador's jurisdictional reach. 633 F.3d at 162. By contrast, in *SPS Corp I*, the Third Circuit found that factor one cautioned against discovery because "[Applicant] has said that [foreign company] possesses the documents it seeks," meaning "the discovery sought here is also in Brazil" and "in the possession of a party subject to the Brazilian courts' jurisdiction." *SPS Corp I, Fundo de Investimento em Direitos Creditorios Nao Padronizados v. Gen. Motors Co.*, 110 F.4th 586, 592 (3d Cir. 2024). The facts here parallel *SPS Corp I*: "[t]he only sense in which [the discovery] is 'unobtainable' stems from [Applicants'] repeated litigation defeats, not because of geographic and jurisdictional barriers." *Id.* Since the evidence Applicants demand is not "evidence . . . unobtainable absent § 1782(a) aid[,]" *Intel*, 542 U.S. at 264, the first *Intel* factor favors Shell Chemical.

### 2. *Intel* factor #2

The second *Intel* factor instructs me to consider the "nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel,* 542 U.S. at 264. This factor slightly favors Shell Chemical.

12

The parties agree that Dutch courts are *generally* receptive to judicial assistance by U.S. courts, favoring Applicants. D.I. 28 at 14; D.I. 37 at 14; *see* D.I. 37-1 ¶ 33. But in *SPS Corp I*, the Third Circuit held that "district courts may consider receptivity generally *or* specifically," and upheld my reasoning that focused on a pending Brazilian discovery proceeding. 110 F.4th at 593 (emphasis added). Because the Brazilian court "presiding over the parties' discovery dispute rebuffed [Applicant's] effort to take the requested discovery," the Third Circuit found I did not abuse my discretion in concluding that "the Brazilian courts are not receptive to extraterritorial discovery from [Applicant], whose requests for substantially the same discovery they have rejected." *Id.* at 594.

Applicants argue that "the Dutch Court's May 7, 2025 Discovery Ruling does not implicate the § 1782 subpoenas' requests for information from Shell Chemical, nor does it indicate that the Dutch Court will refuse to accept any information in the future," so the ruling does not mean the court is "unreceptive" to § 1782 discovery. D.I. 37 at 15. But the Dutch Court denied Vestolit's request for discovery of documents that overlap with the § 1782 application here, such as SCE's margins on ethylene and steam crackers and documents on the pricing of ethylene, finding insufficient interest for Vestolit's defense or counterclaim. D.I. 36-1 ¶¶ 6.8–6.12; *e.g.*, D.I. 36-1 ¶ 6.9 ("Vestolit has not presented any

13

concrete behaviors of SCE to substantiate" its supply-side collusion theory). The Dutch Court also described the request for broad categories of documents as "a fishing expedition" (D.I. 36-1 ¶ 6.12), which at the least indicates *some* lack of receptivity from the Dutch Court and qualifies as "affirmative evidence," *In re Application of Imanagement Servs. Ltd.*, 2006 WL 547949, at *4 (D.N.J. Mar. 3, 2006), or "specific directions to the contrary from a foreign forum," *Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1102 (2d Cir. 1995).

The Dutch Court may be receptive in the future to some of the evidence within the § 1782 application. But "we do not require [parties opposing § 1782 discovery] to prove a negative, *i.e.*, that those courts or [the foreign country's] legal system generally would under no circumstances be receptive to the § 1782 discovery sought here." *SPS Corp I*, 110 F.4th 586, 594. Accordingly, this factor leans slightly towards Shell Chemical.

### 3. *Intel* factor #3

The third factor favors Shell Chemical. When evaluating foreign receptivity, the district court may "consider whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. Applicants argue that *Chevron* is "highly instructive," quoting the court's finding that "whether a foreign court would allow analogous discovery leading to the production of

14

documents" is separate from "whether that court would consider evidence revealed in a section 1782 proceeding." D.I. 37 at 18 (quoting 633 F.3d at 163). But in *Chevron*, the record was unclear about whether the Ecuadorian court denied the requested discovery. 633 F.3d at 162–63. Here, the Dutch Court has already denied discovery in its ruling on Vestolit's 843a motion. D.I. 37-1 ¶¶ 6.8-6.12. As I have previously stated, if the foreign court rules against discovery, "any discovery I provide would likely circumvent foreign proof-gathering restrictions, because the foreign tribunal has already rejected requests for the same documents." *In re Letter of Request from SPS Corp I*, 2022 WL 3908067, at *3 (D. Del. Aug. 30, 2022) (internal quotation marks and citations omitted).

"Adverse discovery rulings by foreign courts are not necessarily fatal for § 1782 applicants." *SPS Corp I*, 110 F.4th at 594. But the procedural history of the foreign proceedings here does suggest "an attempt to circumvent foreign proof-gathering restrictions." Applicants were given several opportunities for discovery in the Dutch Court proceedings that they declined and then proceeded to file the § 1782 application here *while* the 843a Disclosure Motion was pending. D.I. 41 ¶¶ 15–16; *see* D.I. 29-6; D.I. 29-8. Applicants did not inform the Dutch Court that they were seeking discovery in the United States. D.I. 41 ¶ 18. And when an unfavorable ruling came down in the 843a motion, Applicants doubled down on

15

their position that the information they seek here is necessary for their case, even though the Dutch Court made definitive statements on "insufficiently plausible" support for supply-side collusion and rejected the relevance of margin data. *See* D.I. 37-1 ¶ 6.11; D.I. 37 ¶ 30 ("Vestolit respectfully disagrees with the Amsterdam Court's assertion that . . . Vestolit has not specifically explained why it needs the margin data").

Accordingly, this factor weighs in favor of Shell Chemical. *See In re Nokia Techs. Oy*, 2024 WL 1675025, at *4 (D. Del. Apr. 18, 2024) ("a perception that an applicant has side-stepped less-than-favorable discovery rules by resorting immediately to § 1782 can be a factor in a court's analysis") (internal quotation marks and citation omitted).

### 4.   *Intel* factor #4

The fourth factor favors Shell Chemical. "A district court evaluating a § 1782 discovery request should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure." *Mees*, 793 F.3d at 302.

Applicants describe their requests as "proportional to SCE's claims." D.I. 37 at 20. Shell Chemical describes the subpoenas as "burdensome" and "wildly overbroad." D.I. 40 at 8–9. Both parties provide expert declarations supporting their characterizations of the discovery. *E.g.*, D.I. 37-1 ¶¶ 19–20, 31

16

(Vestolit explaining the importance of margin data); D.I. 41 ¶¶ 12, 13 (Shell Chemical explaining why any pass-on is a moot point[1]). I agree with Shell Chemical that the subpoenas are overbroad. They seek "all documents relating to" thirty broad categories and a deposition of a Shell Chemical representative on twenty-two topics that span fifteen years and involve other Shell affiliates and geographies. D.I. 40 at 8–9; *see* D.I. 6-1. Moreover, some of the requested information has already been produced by SCE in the Dutch Court proceedings. For instance, Applicants (in the words of their own counsel) "confirmed that they saw no need to submit a disclosure motion in relation to the request for supporting data for the Dataroom Damages Calculation," D.I. 37-1 ¶ 13, yet the subpoenas demand that Shell Chemical produce "[a]ll Documents relating to the Shell Damages Memorandum" here. D.I. 6-1 at 9. And even though SCE has already provided Applicants its mandate agreement with Shell Chemical and other Shell entities in the Dutch Court proceedings, D.I. 29 ¶ 40; *see* D.I. 7-7, the § 1782 application requests "[a]ll Documents relating to any mandate." D.I. 6-1 at 8–9.

---

[1] SCE asserts that it has suffered all damages and that all Shell entities that may be affected by the cartel have assigned the collection of their claims by mandate to SCE, defeating any pass-on defense (i.e., that SCE passed on the alleged ethylene undercharge to ethylene purchasing groups like Shell Chemical). D.I. 29 ¶ 22; *see* D.I. 7 ¶¶ 6–8.

17

The requested discovery is in sum overly intrusive and redundant and, to borrow from the Dutch Court's characterization of Vestolit's largely overlapping 843a requests, the subpoenas appear to be a fishing expedition. Accordingly, the fourth factor also favors Shell Chemical.

\* \* \* \*

In short, all four factors weigh in favor of vacating the subpoenas. Moreover, neither of the aims of § 1782—"providing *efficient* assistance to participants in international litigation and encouraging foreign countries by example"—would be served by requiring Shell Chemical to respond to the subpoenas, as the Dutch Court has already effectively rejected Applicants' discovery requests.

### C.  Fees

Finally, I will deny Shell Chemical's request for "an award of its reasonable expenses under Rule 45([d])(1), 28 U.S.C. § 1927, or under th[e] Court's inherent power and broad discretion." D.I. 40 at 10. Shell Chemical cites one case in support of its request—*Hallamore Corp. v. Capco Steel Corp.*, 259 F.R.D. 76 (D. Del. 2009). In *Hallimore*, the court awarded reasonable expenses to the recipient of a defective subpoena because the party that served the subpoena "was informed as to the invalidity of its subpoena on several occasions, and failed to correct [it]." *Id.* at 81. The subpoena in that case, however, was blatantly defective and

18

unenforceable, as it was issued out of the District of Delaware but called for the attendance of the recipient at a deposition in the Eastern District of Pennsylvania. *Id.* The subpoenas in this case are not fairly characterized as blatantly defective, and an award of expenses is not justified here.

## IV.  CONCLUSION

Although Applicants have met the statutory requirements for a § 1782 application, Applicants appear to be using § 1782 to circumvent Dutch discovery rules. The *Intel* factors on the whole favor vacating the § 1782 order and quashing the subpoenas, and accordingly I will exercise my discretion to grant Shell Chemical's motion.

The Court will issue an Order consistent with this Memorandum Opinion.